UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEAN CLAUDE AKNIN,

Petitioner,

v.

KIM HOLLAND, Warden,

Respondent.

Case No.  15-cv-00529-YGR (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Jean Claude Aknin, a state prisoner currently incarcerated at California Correctional Institution in Tehachapi, California, brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his 2010 conviction and sentence rendered in the San Mateo County Superior Court.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES all claims in the petition for the reasons set forth below.

I.      **FACTUAL BACKGROUND**

The California Court of Appeal described the relevant facts as follows:

> The parties dispute many facts, but we begin by discussing some that are uncontroverted.  After work on the evening of August 21, 2008, Aknin went out to eat and drink.  According to him, he drank the equivalent of about seven beers over six hours.  When he was finished, he asked a bartender to call a cab, and when the cab arrived he told the driver that he wanted to find some girls and party.
>
> A.F. was working as a prostitute on the streets of Redwood City that evening.  She worked for a pimp who went by the name of "Gorilla."  The cab driver pointed A.F. out to Aknin and told him that she was "'a girl who will party with you.'"  The cab pulled over, and Aknin and A.F. agreed on a price for sex.
>
> Aknin asked the driver to take them to the Garden Motel on Broadway.  No rooms were available.  According to A.F., Aknin declined an invitation to use a room she had rented in a different motel.  The two then walked from the Garden Motel to a nearby 7–Eleven, and A.F. used Aknin's cellular phone outside of the store.  It is at this point that their stories diverge.
>
> A.F. testified that Aknin became aggressive, and she told him that she wanted to end their association.  She stated that she started to walk away, but she was then grabbed from behind,

United States District Court
Northern District of California

dragged into an alley, and choked. She testified that she lost consciousness and, when she came to, found herself naked from the waist down. She stood up and yelled for help. She does not recall having any type of sexual relations with Aknin, and she does not know how her pants were removed. She was uncertain if she had been sexually assaulted, but at trial she testified: "Pretty sure I was. I know I was. In my heart, it tells me I was."

A.F. testified that a man who was nearby, later identified as Eddie Griffith, arrived at the scene after she screamed, told her he would "get him," and chased after Aknin. Another man, later identified as Colin Beaumont, took A.F. to a motel room where he was staying so she could wash her face. He gave her a pair of pants to wear and told her that the police were on the way.

Aknin testified and gave a different account of the events. He stated that after A.F. used his cellular phone, she went into the 7-Eleven store alone, spoke with a man he later identified as Griffith, exited the store, and started walking with Aknin back to the motel. According to Aknin, A.F. suggested they go into the alley to have sex. Once in the alley, A.F. pulled her pants down, pulled one leg out of her pants, squatted down, rolled a condom onto his penis with her mouth and fingers, and initiated oral sex. He stated he could not become fully erect, told A.F. that they were done, pulled the condom off and threw it aside, and zipped up his pants.

Aknin testified that when he refused to continue sexual relations, A.F. demanded his money, pointed to Griffith who was waiting nearby, and told Aknin that Griffith had a gun. Aknin testified that he was afraid for his life, lunged forward, grabbed A.F.'s neck, and pushed backwards. According to Aknin, both he and A.F. fell to the ground. He landed on top of her holding her neck, pushed himself up while still holding her neck, and then ran away.

Other than the events at the 7-Eleven store and in the alley, many other facts are undisputed. It is undisputed that A.F. sustained injuries, including a black eye, bloodshot eyes, bruises on her neck, and scrapes on her shoulder and knee. Although Aknin does not deny these injuries, he disagrees about the manner in which A.F. sustained them. Photographs of A.F.'s injuries were shown to the jury.

The parties also do not dispute that several items were found at the scene, including a used tampon, a used condom, A.F.'s cellular phone, and A.F.'s pants. Photographs of the scene showing these items were also shown to the jury.

And the parties do not dispute the results of DNA and other forensic examinations, although, as we will discuss in more detail below, they disagree whether some of these examinations were lawful. The forensic results revealed that Aknin and A.F. had a sexual encounter but were inconclusive as to whether the encounter was oral, vaginal, or both. Swabs taken from Aknin's scrotum and penis revealed A.F.'s DNA. A.F. was the source of DNA on the outside of the used condom found at the scene, and Aknin and A.F.

both contributed to DNA on the inside of the condom. The interior of the condom tested positive for one of the components of semen, but no sperm cells were found. Nucleated epithelial (skin) cells were found on the outside of the condom. These cells came from an orifice, but no conclusion could be drawn as to which one. Low levels of amylase, an enzyme found in bodily fluids, were also detected on the outside of the condom. Amylase is found in high concentrations in saliva and in low concentrations in vaginal fluids. But again, no conclusion was reached whether the condom was necessarily or exclusively used for an oral encounter.

Other forensic findings related to A.F.'s blood, but they were also inconclusive as to the nature of the sexual encounter. Blood was detected on swabs of A.F.'s vagina taken after the incident, but no blood was detected on the condom or on the swabs from Aknin's scrotum, penis, or hands. A.F. was menstruating at the time of the incident, and she had been using a tampon that evening. She testified that she did not know what happened to her tampon, although a used one was found at the scene. Tests revealed that her DNA, but not Aknin's, was on the tampon. A DNA test of a bloodstain on the back wall of the alley showed it was A.F.'s.

The only people other than Aknin and A.F. who witnessed some aspects of the incident in the alley were Griffith and Beaumont, and at the trial the parties disputed the reliability of their testimony. Griffith was staying at the Garden Motel at the time and was sharing his room with Beaumont. Both men had criminal histories. Griffith was on parole at the time after serving a prison term for rape, and he had been convicted of armed robbery. At the time of the trial, Beaumont was in jail facing charges for being under the influence of crack cocaine and possession of drug paraphernalia. Beaumont admitted to frequently using drugs, and he testified that he and Griffith had drunk beer and smoked marijuana and crack.

Griffith testified that on the night of the incident he left the motel to use the pay telephone at the 7-Eleven store and saw a couple walk by. He had never seen the woman before. After returning to his motel room, he heard a sound that he described as sounding like someone in a football uniform and helmet running into the wall. He went outside, and saw a man whom he identified as Aknin on the ground making what appeared to be digging or swimming motions with his arms. Griffith thought Aknin might be having a seizure and asked if he needed help. Griffith did not see Aknin move his hips up and down, and he acknowledged that he did not see a sexual act. Aknin sprang up. Griffith told the police immediately after the incident that he saw Aknin fumble with his pants as if to pull up a zipper, but at trial he could not recall having seen this. Aknin then fled. Griffith heard a whimpering sound and saw a naked woman on the ground who started to get up. Griffith chased Aknin, suspecting that a sexual assault had occurred. Griffith eventually caught up with Aknin, and Griffith waved over police cars as they arrived.

Beaumont also testified about the incident. He was in his motel room when he heard a sound and went outside. He saw a

3

man, later identified as Aknin, lying on the ground. He testified that he watched him for two to three minutes and did not see him move. He then saw Aknin get up and start running, and Griffith chased after him. Beaumont heard a woman, later identified as A.F., screaming for help. He did not see A.F. having a sexual encounter with Aknin, but he testified at trial that he saw Aknin's hand on A.F.'s neck as she was struggling. A.F. had blood on her face and neck and was not wearing pants. When A.F. got up, she was unsteady on her feet and had trouble maintaining her balance. Beaumont took A.F. to the motel room and gave her a pair of Griffith's pants. A.F. said that she had been raped and used the bathroom to wash the blood off.

As part of his defense, Aknin suggested that Griffith was actually A.F.'s pimp, Gorilla, and that Griffith and A.F. were working together at the time of the incident in a scheme to rob him. A.F. and Griffith denied these suggestions. Whether Griffith was A.F.'s pimp and working with A.F. to rob Aknin became an important issue at the trial.

Griffith testified he had never seen A.F. before seeing her in the 7-Eleven store on the night of the incident and never threatened to rob Aknin. He testified he had never been a pimp or involved with prostitution and did not have a street name or nickname of Gorilla. He did admit, however, that he had a tattoo of a gorilla on his back, which he testified signified his history with heroin.

Beaumont told a defense investigator before the trial that Griffith was known as Gorilla, and at trial he testified he believed that was because of the tattoo on his back. But Beaumont testified that he never heard anyone call Griffith Gorilla. Before the trial, Beaumont also told the defense investigator that Griffith had told him he was from Las Vegas and told a police investigating officer that he thought Griffith was from Las Vegas. This mattered because Gorilla apparently had stayed or lived in Las Vegas. At the trial, however, Beaumont recanted these statements. He testified that Griffith had never told him he was from Las Vegas and that he had been wrong about Griffith being from Las Vegas, but had thought that was where Griffith was from because most people who have tattoos come from Las Vegas.

After the incident, Aknin was taken into custody and examined, and a sexual-assault examination was performed on A.F.

*People v. Aknin*, No. A130256, 2013 WL 4016520, *1-3 (Cal. Ct. App. Aug. 2, 2013) (footnote in original).

## II.    PROCEDURAL BACKGROUND

On December 3, 2008, the San Mateo County District Attorney filed an information in which Petitioner was charged with forcible rape pursuant to California Penal Code § 261(a)(2)[1]

United States District Court
Northern District of California

---

[1] All references to statutes defining criminal offenses or setting out punishments or

(count 1); assault with intent to commit rape pursuant to California Penal Code § 220(a) (count 2); assault by means of force likely to produce great bodily injury pursuant to California Penal Code § 245(a)(1) (count 3;), and battery with serious bodily injury pursuant to California Penal Code § 243(d) (count 4).[2] *Aknin*, 2013 WL 4016520, *3, 1CT 278-281. As to counts 1 through 3, the information alleged Petitioner personally inflicted great bodily injury (under California Penal Code §§ 667.61(e)(3), 12022.8 as to count 1 and under California Penal Code § 12022.7(a) as to counts 2 and 3). *Id.*

The first trial commenced in September 2009. *See* 2RT (Sept. 9, 2009) 7-11. The trial court ruled on numerous pretrial motions. 1ACT 1-44. However, after opening statements, the trial court declared a mistrial and excused the jury because the prosecution had alerted the defense and the trial court of the existence of a newly-discovered report regarding the testing of forensic evidence, i.e., a "condom which apparently has secretions of the defendant inside of it and those of the victim outside of it." 1RT (Sept. 17, 2009) 9, 13, 18-21.

The second trial commenced in August 2010. 3RT 40-43. After a two-week trial, the jury convicted Petitioner of all four charges and found the enhancement allegations to be true. CT 372-373; *Aknin*, 2013 WL 4016520, *4. The trial court sentenced Petitioner to a term of fifteen years to life for rape (count 1). *Aknin*, 2013 WL 4016520, *4. The court stated it was staying the sentences on the other counts under California Penal Code § 654. *Id.* Petitioner timely appealed.

On August 2, 2013, the California Court of Appeal affirmed the conviction of forcible rape, and the finding of great bodily injury, but reversed the conviction for assault with intent to commit rape on the basis that it was encompassed within the conviction for forcible rape. *Id.* at *27. The state appellate court also upheld the sentence of fifteen years to life, and remanded the matter for the trial court to impose and stay the sentence on count three (and the enhancement

---

enhancements refer to the versions of those statutes in effect on August 22, 2008, the date of the charged crimes.

[2] The information also charged that Petitioner made a threat in violation of California Penal Code § 422 (count 5). 1CT 281. However, the People dismissed that charge. *Aknin*, 2013 WL 4016520, *27 n.3.

United States District Court
Northern District of California

associated with that count) and on count four.  *Id.*  On the same date, the state appellate court denied Petitioner's state habeas petition without an opinion.  Resp't Ex. F-1.

On September 12, 2013, Petitioner filed his petition for review, and on November 13, 2013, the California Supreme Court denied review.  Resp't Exs. H, H-1.

On May 21, 2014, the state supreme court denied a Petitioner's state habeas petition as follows: "The petition for writ of habeas corpus is denied.  (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474)."[3]  Resp't Ex. J.  No opinion or other explanation accompanied this citation.  *Id.*

On February 4, 2015, Petitioner commenced the instant habeas action in this Court by filing a document entitled, "Petition for Writ of Habeas Corpus and Memorandum in Support of Petition."[4]  Dkt. 1.  On the same date, the Clerk of the Court sent Petitioner a notice informing him that his petition was not submitted on the proper form and directing him to re-file his petition using the Court's habeas petition form.  Dkt. 4.

On March 4, 2015, Petitioner filed a completed habeas petition form, which is the operative petition in this action.  Dkts. 11, 11-1.  Petitioner raises the same claims that he had raised in his petition for review and state habeas petition filed in the California Supreme Court. *See id.*

On April 7, 2015, this Court issued an Order to Show Cause.  Dkt. 12.  Respondent filed an Answer.  Dkt. 14.  Petitioner filed a Traverse.  Dkt. 17.  The matter is fully briefed and ripe for adjudication.

## III.   LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996,

---

[3] The pin cite to *Duvall* indicates that the initial pleading requirements for filing an application for habeas corpus in state court requires the petitioner to "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations."  9 Cal. 4th at 474.

[4] Upon reviewing the record, the document Petitioner had submitted is identical to the opening brief his appellate attorney had submitted for his direct appeal.  *Compare* Dkt. 1 *with* Resp't Ex. C.

United States District Court
Northern District of California

United States District Court
Northern District of California

a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, s*ee Miller-El v. Cockrell*,  537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

7

1   Even if constitutional error is established, habeas relief is warranted only if the error had a

2   "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*,

3   532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

4   On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating

5   state-court rulings" and "demands that state-court decisions be given the benefit of the doubt."

6   *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).  In applying the

7   above standards on habeas review, this Court reviews the "last reasoned decision" by the state

8   court.  *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

9   When there is no reasoned opinion from the highest state court to consider the petitioner's

10   claims, the court looks to the last reasoned opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06

11   (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  Thus, a federal court

12   will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and

13   analyze whether the last reasoned opinion of the state court unreasonably applied Supreme Court

14   precedent.  *See Ylst*, 501 U.S. at 804-06; *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir.

15   2000).  The last reasoned decision in this case is the state appellate court's unpublished disposition

16   issued on August 2, 2013, which relates to some of Petitioner's federal claims.

17   Where the state court gives no reasoned explanation of its decision on a petitioner's federal

18   claim, a federal court should conduct "an independent review of the record" to determine whether

19   the state court's decision was an objectively unreasonable application of clearly established federal

20   law.  *Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006); *Himes v. Thompson*, 336

21   F.3d 848, 853 (9th Cir. 2003).  Here, Petitioner presented his other federal claims in his state

22   habeas petitions, which the state appellate and supreme courts summarily denied.  *See* Resp't Exs.

23   F-1, J.  As such, these claims may be reviewed independently by this Court to determine whether

24   that decision was an objectively unreasonable application of clearly established federal law.  *See*

25   *Plascencia*, 467 F.3d at 1197-98; *Himes*, 336 F.3d at 853.

26   **IV.    DISCUSSION**

27   Petitioner alleges the following claims: (A) the trial court erred in failing to instruct the

28   jury as to the crime of rape of an unconscious person pursuant to California Penal Code § 261

(a)(4); (B) prosecutorial misconduct for (1) withholding key evidence on the first trial resulting in a mistrial and (2) violating *Brady*[5] by failing to disclose matters pertaining to immunity to A.F. and Griffith for prior perjury; (C) ineffective assistance of counsel ("IAC") by trial counsel, Michael Hroziencik, Esq., for failing to object when the prosecutor introduced inadmissible evidence and improper closing argument[6] that included a combination of "hearsay, opinion and speculation"; and (D) insufficiency of the evidence to support the rape conviction.[7]  *See* Dkt. 1 at 3-5; Dkt. 11-1 at 1.[8]  The Court addresses each below:

### A.      Failure to Instruct Jury on California Penal Code § 261(a)(4)

Petitioner first argues that the trial court erred in failing to instruct the jury as to the crime of rape of an unconscious person pursuant to California Penal Code § 261(a)(4).  Dkt. 11-1 at 1. In essence, Petitioner contends that he was wrongly convicted of forcible rape when the evidence showed that the victim was unconscious, and that therefore if he were guilty of rape it was rape of an unconscious person pursuant to California Penal Code § 261(a)(4) rather than forcible rape pursuant to California Penal Code § 261(a)(2).  *See* Dkt. 1 at 5-14.

Petitioner had raised this claim in his petition for review filed in the California Supreme Court.  *See* Resp't Ex. H at 11-14.  However, the state supreme court summarily rejected this claim.  Resp't Ex. H-1.

A challenge to a jury instruction solely as an error under state law does not state a claim

_____

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

[6] Petitioner's federal petition lists his claim relating to the prosecution's introduction of inadmissible evidence and improper closing arguments under a conclusory prosecutorial misconduct claim.  Dkt. 11-1 at 1-2.  However, in his state habeas opinion, it is clear that Petitioner's main concern was that trial counsel "made no objection and failed to move to strike" the alleged inadmissible evidence, Resp't Ex. I at 72, and "did not . . . move to strike [the prosecutor's] statements, seek an admonition to the jury to disregard or move for a mistrial," *id.* at 97.  Therefore, the Court construes these claims as part of Petitioner's IAC claims.

[7] The remaining argument in the body of the initial petition filed by Petitioner is that the conviction of assault with intent to commit rape (count two) must be reversed.  Dkt. 1 at 5. However, as mentioned above, the state appellate court reversed that conviction on the basis that count two was encompassed within count one.  *Aknin*, 2013 WL 4016520, *27.  Therefore, this claims is DENIED as moot.

[8] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Petitioner.

United States District Court
Northern District of California

cognizable in federal habeas corpus proceedings. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Id.* at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155).

The state supreme court did not unreasonably reject Petitioner's claim. As mentioned above, a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle*, 502 U.S. at 71-72. Petitioner has not explained what federal issue might be involved, and no such issue is readily apparent. Thus, Petitioner's claim on this issue does not provide a basis for federal habeas relief.

In any event, the objective reasonableness of trial court's decision to instruct the jury on forcible rape pursuant to California Penal Code § 261(a)(2) is further supported by the state appellate court's reasoned opinion on direct appeal, which states as follows:

> Aknin argues he was "wrongly convicted" (boldface and capitalization omitted) of forcible rape (§ 261, subd. (a)(2)) because, if he raped A.F., he instead committed rape of an unconscious person (§ 261, subd. (a)(4)).[FN 15] We disagree.
>
> [FN 15:] The distinction is relevant to sentencing. Section 667.61 provides for a mandatory 15-years-to-life sentence for a defendant who is convicted of forcible rape and who personally inflicted great bodily injury on the victim; this sentencing provision does not apply to rape of an unconscious person. (See § 667.61, subds. (b), (c)(1), (e)(3).)
>
> "Forcible rape is defined as 'an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [¶] . . . [¶] (2) [w]here it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another.' (§ 261, subd. (a)(2).)" (*People v. Griffin* (2004) 33 Cal. 4th 1015, 1022 (*Griffin*).) To establish force within the meaning of section 261, subdivision

(a)(2), "'the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].'   [Citation.]" (*Griffin*, *supra*, 33 Cal. 4th at pp. 1023-1024.)  Consistent with this standard, the trial court instructed the jury that: "Intercourse is accomplished by force if a person uses enough physical force to overcome the woman's will."  (See CALCRIM No. 1000.)

The evidence supports the conclusion that, if Aknin had intercourse with A.F., she did not consent to the intercourse and Aknin accomplished the intercourse by force or violence.  (See § 261, subd. (a)(2); *Griffin*, *supra*, 33 Cal. 4th at p. 1022; CALCRIM No. 1000.)  A.F. testified that, although she initially agreed to have sex with Aknin, she changed her mind and told Aknin: "'I'm done. No more.'"  She then walked away.  As she walked away, Aknin grabbed her from behind, dragged her into an alley, and choked her into unconsciousness.  Aknin then allegedly had intercourse with her.  This evidence shows Aknin used physical force sufficient to support a finding that the act of intercourse was against A.F.'s will.  (See *Griffin*, *supra*, 33 Cal. 4th at pp. 1023-1024.)

Despite the evidence that A.F. explicitly withdrew her initial consent and Aknin then used physical force to overcome her will, Aknin contends his conviction of forcible rape was improper.  He appears to argue that because the force he used rendered A.F. unconscious before he had intercourse with her, the People could only prosecute him for rape of an unconscious person and could not prosecute him for forcible rape.  We reject this argument.  Although the evidence could have supported a charge of rape of an unconscious person, it also supports the charge and conviction of forcible rape.  Aknin cites no authority holding or suggesting that a forcible rape charge is improper when a victim expresses a lack of consent, and the defendant then overpowers the victim by using so much force that the victim is rendered unconscious before there is sexual penetration.[FN 16]

[FN 16:] In a footnote, Aknin cites *People v. Smith* (2010) 191 Cal. App. 4th 199, 205, in which the court held a single act of intercourse can support only one rape *conviction*.  But a single act of intercourse may be chargeable under multiple theories that are supported by the evidence.  (See *ibid.* ["'[O]nly one punishable offense of rape results from a single act of intercourse, though it may be chargeable in separate counts when accomplished under the varying circumstances specified in the subdivisions of section 261 of the Penal Code.' [Citation.]"])

The cases Aknin cites do not support his position.  Aknin cites *People v. Dancy* (2002) 102 Cal. App. 4th 21, 34 for the proposition that a defendant may be convicted of rape of an unconscious person where the defendant caused the victim to become unconscious.  In *Dancy*, the defendant was charged with, and convicted of, rape of an unconscious woman; the court did not address a charge of forcible rape.  (*Id.* at pp. 29, 31.)

Aknin's reliance on *People v. Kusumoto* (1985) 169 Cal.

App. 3d 487 is also misplaced.  In *Kusumoto*, the court held the evidence was insufficient to support a conviction of forcible penetration with a foreign object because the penetration occurred while the victim was asleep, and the only force used was that necessary to accomplish the penetration.  (*Kusumoto* at pp. 490, 494.)  Here, in contrast, there is evidence Aknin used force against A.F. after she expressed her lack of consent.[FN 17]

[FN 17:] The remaining cases cited by Aknin are inapposite and did not involve forcible rape charges.  In *People v. Lyu* (2012) 203 Cal. App. 4th 1293, 1301-1302, the court held the defendant's convictions of (nonrape) sexual offenses against an unconscious person were not supported by substantial evidence because the evidence showed the victim was conscious.  In *People v. Ing* (1967) 65 Cal. 2d 603, 606-607, 612, questioned on other grounds in *People v. Tassell* (1984) 36 Cal. 3d 77, 89, fn. 8, the court held there was sufficient evidence to support the defendant's conviction of rape where he administered an intoxicating substance that prevented the victim from resisting.

Finally, Aknin argues the forcible rape conviction is improper because the alleged act of intercourse occurred about 30 minutes after he rendered A.F. unconscious.  Aknin appears to base this argument on Griffith's response to the prosecutor's question about how much time passed between the time he left the 7-Eleven store and the time he heard the noise outside his room.  Griffith stated: "Okay.  I'm gonna guess, and my guess is gonna be not more than an hour but—more than half an hour but not more than an hour.  Somewhere like 35 minutes."  The jury was not required to conclude that Griffith's equivocal testimony on this point established the amount of time that passed between the time Aknin rendered A.F. unconscious and the time he had intercourse with her.

*Aknin*, 2013 WL 4016520, *24-25 (footnotes in original).  It is evident that the state appellate court found the evidence supported a finding that A.F. withdrew her consent and Petitioner used physical force to overcome her will and rendered her unconscious.  *Id.*  Thus, the state appellate court determined that although the evidence could have supported a charge of rape of an unconscious person, it *also* supported the charge and conviction of forcible rape.  *Id.*  The state appellate court further concluded that Petitioner's conviction of forcible rape was not improper because one can be convicted of forcible rape under state law if the evidence shows that the victim expressed a lack of consent, and the defendant then overpowers the victim by using so much force that the victim is rendered unconscious before there is sexual penetration.  *Id.*  Still, as mentioned above, Petitioner disagrees and contends that he should not have been convicted of forcible rape.  Petitioner's argument involves an interpretation of a state statutory scheme, and is based on state case law.  This Court is bound by the state court's interpretation of its own law and errors of state

12

1   law do not warrant federal habeas relief unless they also violate federal law.  *See Estelle*, 502 U.S.

2   at 67-68.  Accordingly, relief on this claim is DENIED.

3   **B.      Prosecutorial Misconduct Claims**

4   Petitioner raises two claims of prosecutorial misconduct against the prosecutor, Melissa

5   McKowan, Esq.  Dkt. 11-1 at 1-2.  Federal habeas review of prosecutorial misconduct claims is

6   limited to the narrow issue of whether the alleged misconduct "so infected the trial with unfairness

7   as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168,

8   181 (1986); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process

9   analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability

10   of the prosecutor.").  Prosecutorial misconduct that rises to the level of a due process violation

11   may provide the grounds for granting a habeas petition only if that misconduct had a "substantial

12   and injurious effect or influence in determining the jury's verdict."  *Wood v. Ryan*, 693 F.3d 1104,

13   1113 (9th Cir. 2012); *see also Brecht*, 507 U.S. at 637-38.  A petitioner is not entitled to habeas

14   corpus relief in the absence of a due process violation even if the prosecutor's comments were

15   "undesirable, erroneous, or even 'universally condemned.'"  *Donnelly v. DeChristoforo*, 416 U.S.

16   637, 642 (1974).

17   **1.      Withholding Key Evidence During First Trial Resulting in Mistrial**

18   Petitioner contends that the prosecutor "withheld key evidence on the first trial of this

19   matter resulting in a mistrial."  Dkt. 11-1 at 1.  In his petition, Petitioner did not provide citations

20   to the record to support any of his aforementioned assertions.  *See id.*  Without specific claims and

21   facts, a Court is unable to determine whether Petitioner's constitutional rights were violated.  *See*

22   *Donnelly*, 416 U.S. at 643.  On this basis alone, habeas relief may be denied.  *Jones v. Gomez*, 66

23   F.3d 199, 205 (9th Cir. 1995) (holding that relief on a habeas claim made "[w]ithout reference to

24   the record or any document" was properly denied).  However, the Court acknowledges that

25   Petitioner is referring to the fact that during the first trial, prosecution had alerted the defense and

26   the trial court of the existence of a newly-discovered report regarding the testing of forensic

27   evidence, i.e., a "condom which apparently has secretions of the defendant inside of it and those of

28   the victim outside of it."  1RT (Sept. 17, 2009) 9, 13, 18-21.  The record shows that the prosecutor

United States District Court
Northern District of California

acted as soon as she discovered the report, and that the trial court declared a mistrial during the first trial. *See id.* Furthermore, Respondent points out that the conviction at issue did not result from the first trial (during which the alleged prosecutorial misconduct took place), and that Petitioner is "referring to a trial that is not the basis for his current custody status." Dkt. 14-1 at 15.[9] The Court agrees and finds that the prosecutor's actions of alerting the trial court and defense about the newly-discovered report at the *first* trial did not amount to misconduct because it did not have a "substantial and injurious effect or influence in determining the jury's verdict" at the *second* trial. *See Wood*, 693 F.3d at 1113; *see also Brecht*, 507 U.S. at 637-38. In view of the record presented, the California Supreme Court had an objectively reasonable basis for rejecting Petitioner's first claim of prosecutorial misconduct. Relief on this claim is DENIED.

## 2.    Violating Constitutional Disclosure Requirements

Petitioner argues that the prosecutor failed to disclose in a timely manner matters pertaining to immunity to A.F. and Griffith for prior perjury. Dkt. 11-1 at 1. Petitioner maintains that the prosecutor thereby violated *Brady* as well as *Giglio*.[10] *Brady* and its progeny require the prosecutor to disclose material exculpatory evidence to the defense, even without a request. *Kyles v. Whitley*, 514 U.S. 419, 432-437 (1995).

This claim was raised in Petitioner's state habeas petition filed in the California Supreme Court; however, the state supreme court rejected the claim with a citation to *People v. Duvall*, 9 Cal. 4th 464, 474 (1995), a citation that refers to the burden to plead sufficient grounds for relief and to state fully and with particularity the facts of which relief is sought.

The first question, then, is whether the citation to *Duvall* establishes a procedural bar. As mentioned above, *Duvall* stands for the rule that a California habeas petition must state with "particularity the facts on which relief is sought," and also stands for the proposition that documentary evidence must be provided. 9 Cal. 4th at 474. If a petition is dismissed for failure to state the facts with particularity—that is, with a cite to *Duvall*—the petitioner may file a new

---

[9] Page number citations refer to those assigned by Respondent.

[10] *Giglio v. United States*, 405 U.S. 150, 154 (1972) (Impeachment evidence is exculpatory evidence within the meaning of *Brady*.).

United States District Court
Northern District of California

petition curing the defect.  *Gaston v. Palmer*, 417 F.3d 1030, 1037 (9th Cir. 2005); *see Kim v. Villalobos*, 799 F.2d 1317, 1319 (9th Cir. 1986).  There is no reason the result should be any different when the defect in the state petition was failure to attach documents than when the defect was failure to plead with particularity.  Neither are irremediable errors, such as untimeliness.  The Court concludes, therefore, that the state court would have allowed Petitioner to file a new state petition remedying the defect of the old one.  That is, although this particular state petition was denied for procedural reasons, Petitioner's claim is not procedurally defaulted in state court—he could have raised this claim in a new petition—and thus this claim is not procedurally barred.  Meanwhile, Respondent argues that if Petitioner re-filed this claim in a petition in the California Supreme Court, then it would be untimely, stating:

> . . . the time lapse between that denial and the present is great enough that he can no longer expect to have his claim heard on the merits should he now re-file his petition.  In that case the claim would be procedurally defaulted in this Court.  *See e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Woods v. Sinclair*, 764 F.3d 1109, 1129-30 (9th Cir. 2014).

Dkt. 14-1 at 16.  Even if true, the Court need not further discuss whether this claim would be procedurally defaulted because it fails on the merits as explained below.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  The Supreme Court since has made clear that the duty to disclose such evidence applies even when there has been no request by the accused, *see United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *see Giglio*, 405 U.S. at 154, *United States v. Bagley*, 473 U.S. 667, 676 (1985).  Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[] confidence in the outcome of the trial.'"  *Smith v. Cain*, 132 S. Ct. 627,

United States District Court
Northern District of California

630 (2012) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)) (brackets in original).  But the mere possibility that undisclosed information might have been helpful to the defense, or might have affected the outcome of the trial, is not enough for relief under *Brady*.  *United States v. Olsen*, 704 F.3d 1172, 1184 (9th Cir. 2013).

In sum, for a *Brady* claim to succeed, (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) that evidence must have been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice must have ensued.  *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Because there is no reasoned opinion relating to this prosecutorial misconduct claim, the state court has not provided any factual background.  While Petitioner's federal petition contains only a brief summary description of this claim, he provided a more extensive background of the facts in his state habeas petition, which Respondent has not challenged and the Court has verified to match the record:

> The prosecution's star witnesses testified at the beginning of the trial:  [A.F.] testified on August 30, and 31, 2010, and Eddie Griffith testified on August 31, 2010.
>
> On August 30, 2010, the trial court, out of the presence of the jury, questioned the prosecutor about whether [A.F.] and Griffith might be subject to a perjury prosecution.  The prosecutor acknowledged that Griffith had "lied under oath at the preliminary hearing."  ([5]RT 125.)  The prosecutor reported [A.F.] may have made some misstatements at the preliminary hearing, but she "d[id] not have the same assurance that there will be an admission of perjury." ([5]RT 127-128.)
>
> The court appointed Ed Pomeroy as counsel for Griffith. (CT 333; [5]RT 126].)  Mr. Pomeroy said he had already had some discussion with Griffith about his testimony, and Griffith wished to testify.  [(5]RT 126-127.)]  The court appointed Jeff Jackson as counsel for [A.F.].  [(5]RT 128.)]  Mr. Jackson also reported that he had spoken to [A.F.] and that she wanted to testify at trial.  ([5]RT 129.)  Mr. Jackson further reported that he had "talked about the possibility of asking for immunity; she does not want immunity." ([5]RT 12[9].)

Resp't Ex. I at 32-33 (brackets added.)[11]  Petitioner claims that "[t]he prosecutor did <u>not</u> report to

---

[11] The Court has compared Petitioner's background with the record in order to ensure it

United States District Court
Northern District of California

the trial court or defense counsel, as demonstrated in the Declarations of Mr. Jackson and Mr. Hroziencik, that she had already spoken to [A.F.] and Griffith about each one's incriminating statements and their right not to testify." *Id.* (citing Dkt. 1-5 at 4-20). Petitioner further states: "In fact, Griffith had been given immunity." *Id.*

The state supreme court reasonably determined that Petitioner failed to meet the requirements for proving a *Brady* violation. First, the California Supreme Court could reasonably have concluded that Petitioner failed to make a prima facie showing that any discussions about immunity to A.F. for perjury at a prior proceeding were material in the sense of undermining the result of the trial. Petitioner acknowledged in his state habeas petition that A.F. did not want immunity, and was not given it, and that, in any event, she admitted having lied previously about whether she was a prostitute. *See* Resp't Ex. I at 32-33. Furthermore, the record shows that the fact that A.F. was working as a prostitute was not in dispute. Meanwhile, with respect to Griffith, the allegations Petitioner's state habeas petition show that the jury knew that Griffith had been given immunity from prosecution for perjury in connection with his prior testimony. *See id.* at 34. The allegations as set forth by Petitioner in either his federal or state habeas petitions are not entirely clear as to the subject matter of any alleged past perjury on the part of Griffith, but the declaration of Petitioner's trial counsel states that the alleged perjury stemmed from whether Griffith had threatened to shoot Petitioner when he chased him, and that Griffith lied because he allegedly feared that he would suffer a parole violation for the threat. *See* Dkt. 1-5 at 11-15.

The California Supreme Court could have concluded reasonably that even if Petitioner could prove his assertions he failed to establish a prima facie showing of a *Brady* violation. A.F. was not given immunity and did not want it. As to Griffith, Petitioner claimed only that the immunity had a bearing on generic credibility. The state supreme court could reasonably have concluded that the allegedly delayed disclosure was not made so late that it would have prevented trial counsel from making effective use of the information. Petitioner in fact acknowledged that at the time of trial, trial counsel believed that Griffith had lied at the preliminary hearing. Resp't Ex.

correctly cites to the record.

I at 34.  The state supreme court could therefore have reasonably concluded that the immunity from prosecution for prior perjury had no bearing on any substantial issue in the case, and whatever significance there might be to the question of whether Griffith threatened to shoot Petitioner when chasing him, the delay in the disclosure of the immunity was not harmful and was several levels removed from what was at issue in the case.  The state supreme court could also have reasonably concluded that the delay would not have significantly impaired trial counsel's ability to cross-examine Griffith about the immunity he was given and anything that incriminated Petitioner, and therefore the delay did not have an adverse net effect on the trial.

Accordingly, under the circumstances, it simply cannot be said that the state supreme court's rejection of the *Brady* claim was objectively unreasonable.  *See Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006) (applying 28 U.S.C. § 2254(d)).  Therefore, Petitioner is not entitled to federal habeas relief on his *Brady* claim, and this claim is DENIED.

**C.     IAC Claims**

In his federal petition, Petitioner makes a general claim he was denied his right to effective assistance of counsel because trial counsel failed to object when the prosecutor introduced inadmissible evidence and improper closing argument that included a combination of "hearsay, opinion and speculation."  Dkt. 11-1 at 2.  In order to understand the exact grounds of his IAC claims, the Court turned to Petitioner's initial filing in this matter, which is identical to the opening brief filed on direct appeal, in which he elaborated on each of his IAC claims.  *See* Dkt. 1; Resp't Exs. C, C-1.[12]  The Court thus construes his IAC claims to be based on the following grounds that trial counsel was ineffective for: (1) failing to move to suppress evidence obtained by swabbing Petitioner's genitals and combing his pubic hairs; (2) failing to object to certain testimony by prosecution witnesses and certain statements made by the prosecutor during closing arguments.  *See id.*  Finally, Petitioner claims that the cumulative errors of trial counsel resulted in prejudice.  *See id.*

---

[12] Because Respondent has provided a complete copy of Petitioner's opening brief, the Court will cite to the copy lodged by Respondent as exhibits "C" and "C-1."  *See* Resp't Exs. C, C-1.

United States District Court
Northern District of California

### 1.    Applicable Law

An IAC claim under the Sixth Amendment is reviewed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  A habeas petitioner has the burden of showing through evidentiary proof that counsel's performance was deficient.  *See Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir.), *cert. denied*, 498 U.S. 960 (1990).

Under the first prong, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  Because of the difficulties inherent in fairly evaluating counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  To satisfy the second prong under *Strickland*, the petitioner must establish that he was prejudiced by counsel's substandard performance.  *See Gonzalez v. Knowles*, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing *Strickland*, 466 U.S. at 694).  It is unnecessary for a federal court considering an ineffective assistance of counsel claim on habeas review to address the prejudice prong, i.e., the second factor of the *Strickland* test, if the petitioner cannot establish incompetence, as required under the first prong.  *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Under AEDPA, a federal court is not to exercise its independent judgment in assessing whether the state court decision applied the *Strickland* standard correctly; rather, the petitioner must show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.  *Bell v. Cone*, 535 U.S. 685, 699 (2002); *see also Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential.").  The Supreme Court has specifically warned that: "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether *there is any reasonable argument* that counsel satisfied *Strickland*'s deferential standard."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (emphasis added).  The *Strickland* framework for analyzing ineffective

assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Williams (Terry)*, 529 U.S. at 404-08.

A difference of opinion as to trial tactics does not constitute denial of effective assistance, *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). Furthermore, trial counsel cannot be ineffective for failing to raise a meritless motion. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). Finally, improper comments by a prosecutor during closing arguments can violate due process. *See Darden*, 477 U.S. at 180-81. Habeas relief for prosecutorial misconduct, however, can be granted only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181. The allegedly offending remarks must be considered in light of the "entire proceedings" in assessing whether they caused the trial as a whole to be unfair to the defendant. *Donnelly*, 416 U.S. at 643.

### 2. Analysis

#### a. Failure to File a Motion to Suppress

Petitioner argues that trial counsel was ineffective for failing to file a pretrial motion to suppress evidence obtained by swabbing Petitioner's genitals and combing his pubic hairs. Resp't Ex. C-1 at 22-23. Petitioner argues these measures were unconstitutional because police did not obtain a warrant, and there were no exigent circumstances justifying a warrantless search. *Id.* at 23.

The state appellate court addressed this IAC claim and gave the following background:

> After he was arrested, Aknin was first taken to a hospital. At the hospital, a nurse asked Aknin if he would consent to a sexual-assault examination, which would include collecting evidence from inside his mouth, underneath his fingernails, and the outside of his genitals. Aknin refused. Police officers then took Aknin to the

United States District Court
Northern District of California

Redwood City Police Department, and Detective David Cirina spoke to the on-duty deputy district attorney, who told him that a warrant was not necessary to conduct the sexual-assault examination. The police then took Aknin back to the hospital and asked hospital staff to conduct the examination. Nurse Amie Dubois declined, and told Cirina that she would not collect evidence from Aknin's body without Aknin's consent or a court order.

The police then returned Aknin to the police department, where Cirina and another detective collected the evidence from Aknin. Cirina had received training on the collection of sexual-assault evidence. The detectives had Aknin remove each item of clothing individually, and they scraped the underside of his fingernails and obtained a DNA swab from his cheek. Cirina combed Aknin's pubic hairs with a surgical brush to obtain any foreign matter and had Aknin pluck about 15 pubic hairs. Finally, Cirina swabbed both sides of Aknin's penis and both sides of his scrotum.

As mentioned above, the test results showed that A.F. was a contributor to DNA on Aknin's scrotum and penis. A.F. was the source of DNA on the outside of the used condom found at the scene, and Aknin and A.F. were both contributors to DNA on the inside of the condom. No blood was detected on the condom or on the swabs from Aknin's scrotum and penis.

*Aknin*, 2013 WL 4016520, *4.

The state appellate court then considered and rejected the IAC claim on the merits, stating as follows:

We reject Aknin's ineffective assistance argument for two independent reasons. First, the record on appeal does not disclose that defense counsel's decision to forego filing a motion to suppress lacked a tactical basis, and the decision is not of the type for which there could be no satisfactory explanation. (See *People v. Hart* (1999) 20 Cal. 4th 546, 623-624, 625, 629, 633; *People v. Mendoza Tello* (1997) 15 Cal. 4th 264, 266; *People v. Fosselman* (1983) 33 Cal. 3d 572, 581.) Defense counsel reasonably could have concluded that, given the other clearly admissible evidence, the evidence obtained from the swabbing of Aknin's genitals was not significantly harmful, and was potentially helpful, to Aknin's defense (i.e., his testimony that his only sexual contact with A.F. was consensual oral sex).

The evidence showed A.F. was the source of DNA on the outside of the condom found at the scene, and both Aknin and A.F. were contributors to DNA on the inside of the condom. In light of this evidence establishing Aknin and A.F. had sexual contact of some type, defense counsel reasonably could have concluded that evidence that A.F.'s DNA was on Aknin's scrotum and penis was not harmful to the defense. Indeed, counsel reasonably could have concluded the test results from the swabs of Aknin's genitals were helpful to the defense of the rape charge. Although A.F. was menstruating, no blood was detected on the swabs from Aknin's genitals or on the condom. During his cross-examination of

21

criminalist Mona Ten, defense counsel highlighted these test results, eliciting Ten's testimony that the test used to detect blood is "quite sensitive"; no blood was detected on the swabs of Aknin's penis, scrotum, or hands, or on the condom; and visible blood was found on the swabs of A.F.'s vagina.  Counsel also emphasized these points in closing argument, arguing that, "if there was any penetration by [Aknin] into [A.F.'s] vagina, he would have had blood on him."[FN 4]

[FN 4:] Consistent with trial counsel's approach, Aknin argues in his opening appellate brief that a *weakness* in the prosecution case was "the surprising DNA evidence that failed to show blood on Aknin's genitals or the condom he allegedly used[.]"

Because defense counsel reasonably could have concluded the evidence obtained from Aknin's genitals could assist the defense of the rape charge, counsel reasonably could have decided not to move to suppress that evidence.

Second, apart from the question of whether counsel had a tactical purpose, Aknin has not shown his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.  (See *Strickland*, *supra*, 466 U.S. at pp. 687-688, 694; [*People v.*] *Carter* [2003] 30 Cal. 4th [1166,] at p. 1211.) In light of the limited case law on this issue that was available before trial, we decline to hold that a reasonably competent attorney necessarily would have moved to suppress this evidence, or that Aknin's counsel was ineffective because he failed to do so.  (See *People v. Gonzalez*, *supra*, 64 Cal. App. 4th at p. 438.)

No published California case has addressed the constitutionality under the Fourth Amendment of swabbing the exterior of a sexual-assault suspect's genitals and combing his pubic hairs soon after an arrest.  The parties cite a few decisions by courts in other jurisdictions reaching different conclusions on this issue, based in part on the evidence presented in those cases.  Aknin relies on *State v. Lussier* (Minn. Ct. App. 2009) 770 N.W. 2d 581, 589-590, in which the Minnesota Court of Appeals held that a warrantless examination and touching of the defendant's genitals was not valid as a search incident to a lawful arrest, in part because no record evidence showed "body-fluid evidence following a sexual assault" would naturally evaporate or become compromised over time.  The court declined to address whether exigent circumstances justified the examination because no record evidence supported that argument and because the argument had not been raised in the trial court.  (*Id.* at p. 590, fn. 4.)

Other courts have concluded exigent circumstances can justify a warrantless examination of a sexual-assault suspect's genitals.  (See *Ontiveros v. State* (Tex. Ct. App. 2007) 240 S.W. 3d 369, 371-372 [warrantless swabbing of defendant's penis was justified; although handcuffed, defendant could have urinated in his pants and damaged fragile DNA evidence]; *Kaliku v. United States* (D.C. Ct. App. 2010) 994 A. 2d 765, 779-781 [warrantless swabbing of defendant's penis was justified because DNA evidence could have been contaminated or wiped or rubbed away]; see also

*Commonwealth v. Banville* (2010) 931 N.E. 2d 457, 465, fn. 2 [genital swab and combing of pubic hair was urgent because delay could have resulted in destruction of evidence; although warrant was obtained, search would have been valid as warrantless search incident to arrest].)[FN 5]

[FN 5:] In his reply brief, Aknin cites *Lee v. State* (Ind. Ct. App. 2012) 967 N.E. 2d 529, 536-539, in which the court distinguished *Ontiveros v. State*, *supra*, 240 S.W. 3d 369, and *Kaliku v. United States*, *supra*, 994 A. 2d 765, and found a lack of evidence of exigent circumstances justifying a warrantless penile swab. *Lee* was decided in 2012, so it was not available to Aknin's trial counsel prior to Aknin's 2010 trial. Even if *Lee* had been decided prior to Aknin's trial, it would not change our conclusion about the state of the law for purposes of deciding Aknin's ineffective assistance claim.

In light of the absence of controlling California case law, as well as the limited case law from other jurisdictions and the differing conclusions reached in those cases, we cannot conclude Aknin's trial counsel provided constitutionally ineffective assistance by failing to file a motion to suppress. (See *People v. Upsher* (2007) 155 Cal. App. 4th 1311, 1328-1329 [failure to move to bifurcate prior conviction trial in prosecution for dissuading witness with prior conviction of same offense was not deficient performance because of "absence of controlling case law" and "unsettled state of the law" whether recidivist aspect was element of offense or sentencing provision]; *People v. Foster* (2003) 111 Cal. App. 4th 379, 385 [because no California authority established whether certain cross-examination questions were proper, defendant could not establish that his counsel's failure to object to the questions "'fell below an objective standard of reasonableness'"].)

In addition to the limited applicable case law cited by the parties and discussed above, Aknin suggests other cases would have supported a motion to suppress, such as cases addressing the reasonableness of searches involving intrusions into the body.[FN 6] (See, e.g., *Schmerber v. California* (1966) 384 U.S. 757, 758-759, 767-768, 771-772 [taking of blood sample found reasonable]; *Winston v. Lee* (1985) 470 U.S. 753, 763-766 [proposed involuntary surgery to remove bullet found unreasonable]; *People v. Bracamonte* (1975) 15 Cal. 3d 394, 397-398, 401-404 [forced regurgitation found unreasonable].)[FN 7] We are not persuaded that Aknin's trial counsel was constitutionally ineffective because he did not use this case law to develop a motion to suppress the evidence at issue in this case (obtained through a different type of conduct, i.e., the swabbing of the exterior of Aknin's genitals).[FN 8]

[FN 6:] In a supplemental letter brief, Aknin cites *Florida v. Jardines* (2013) -- U.S. --, 133 S. Ct. 1409, 1417-1418, in which the United States Supreme Court held the government's use of a trained police dog outside a suspect's home was a "search" within the meaning of the Fourth Amendment. That case did not involve police conduct of the type at issue here. Moreover, it was decided after Aknin's trial, so his counsel could not have been deficient for

23

failing to rely on it as the basis for a motion to suppress.

[FN 7:] In his supplemental letter brief, Aknin also cites *Skinner v. Railway Labor Executives' Ass['']n.* (1989) 489 U.S. 602, 617, in which the Supreme Court held the collection and testing of urine samples was a Fourth Amendment search. The *Skinner* case, like the cases cited in the text, does not address the type of conduct at issue here, and we are not persuaded that Aknin's trial counsel was deficient for failing to rely on it as the basis for a motion to suppress.

[FN 8:] We note that the Fourth Amendment argument Aknin now presents was not initially obvious to his appellate counsel—in his opening brief on appeal, Aknin presented no Fourth Amendment claim. In a subsequent motion for leave to file a supplemental opening brief (which this court granted), Aknin's appellate counsel stated he "was not aware" of the Fourth Amendment issue when he filed Aknin's opening brief and only became aware of it while later researching an unrelated matter.

Because Aknin has not established counsel's deficient performance, we need not address the parties' arguments as to whether the performance was prejudicial. Thus, we do not address (1) whether a motion to suppress would have been successful, or (2) whether a successful motion would have resulted in an outcome more favorable to Aknin. (See *People v. Gonzalez*, *supra*, 64 Cal. App. 4th at p. 438 [both showings necessary to establish prejudice].)

*Aknin*, 2013 WL 4016520, *5-7 (footnotes in original and brackets added).

"[I]n order to show prejudice when a suppression issue provides the basis for an ineffectiveness claim, the petitioner must show that he would have prevailed on the suppression motion, and that there is a reasonable probability that the successful motion would have affected the outcome." *Bailey v. Newland*, 263 F.3d 1022, 1029 (9th Cir. 2001) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Failure to file a meritorious suppression motion does not constitute *per se* ineffective assistance of counsel. *Kimmelman*, 477 U.S. at 384.

Here, the state appellate court determined that Petitioner had not established trial counsel's deficient performance by failing to file a motion to suppress the aforementioned evidence because (1) counsel had a tactical purpose to forgo its suppression and (2) a reasonable competent attorney would not have filed such a motion, especially "[i]n light of the absence of controlling California case law." *Aknin*, 2013 WL 4016520, *6. Therefore, the state appellate court rejected this IAC claim without addressing whether a motion to suppress would have been successful or whether a successful motion would have resulted in an outcome more favorable to Petitioner. *Id.* at *7.

1    The Court finds that the state appellate court's rejection of this claim was not objectively

2    unreasonable.  The United States Supreme Court has never required a trial counsel to pursue every

3    nonfrivolous claim or defense, regardless of its merit, viability, or realistic chance of success.

4    *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420, 1421-22 (2009).  Thus counsel's abandoning a

5    defense that has "almost no chance of success" is reasonable, even if there is "nothing to lose" by

6    preserving the defense.  *Id.* at 1419-20.  As mentioned above, the evidence at issue in the instant

7    matter, i.e., test results showing A.F. was a contributor to DNA on Petitioner's scrotum and penis,

8    established that Petitioner and A.F. had sexual contact of some type.  Because Petitioner's

9    testimony was that his only sexual contact with A.F. was *consensual oral sex* and the

10   aforementioned evidence was not significantly harmful to his defense of the rape charge, it was

11   reasonable for trial counsel to decide not to file a motion to suppress such evidence.  Notably, the

12   state appellate court pointed out that A.F. was menstruating at that time, and thus that court

13   reasonably determined that trial counsel could have concluded that such evidence could have

14   assisted Petitioner's defense because counsel had argued in closing that "if there was any

15   penetration by [Aknin] into [A.F.'s] vagina, he would have had blood on him."  *Aknin*, 2013 WL

16   4016520, *7.  Thus, the state appellate court reasonably concluded that trial counsel made a

17   tactical decision not to exclude such evidence.  Such decisions are entitled to substantial

18   deference.  *See Turner v. Calderon*, 281 F.3d 851, 876 (9th Cir. 2002).  Furthermore, the state

19   appellate court reasonably determined that, without any controlling California case law, it "cannot

20   conclude [Petitioner's] trial counsel provided constitutionally ineffective assistance by failing to

21   file a motion to suppress."  *Aknin*, 2013 WL 4016520, *6-7.  Because Petitioner has not pointed to

22   evidence in the record indicating trial counsel's deficiency with regard to this IAC claim, it is

23   unnecessary for this Court to proceed to the second prejudice prong of the *Strickland* analysis, i.e.,

24   whether the motion to suppress would have been successful or whether it would have resulted in

25   an outcome more favorable to Petitioner.  *See Siripongs*, 133 F.3d at 737.

26   Accordingly, the state appellate court's denial of Petitioner's IAC claim—based on trial

27   counsel's failure to file a motion to suppress—was not an objectively unreasonable application of

28   the *Strickland* standard.  The Court therefore finds that there is a "reasonable argument that

United States District Court
Northern District of California

counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Petitioner's IAC claim on this particular ground is DENIED.

### b.      Failure to Object to Evidence and Improper Closing Argument

Petitioner contends trial counsel was ineffective by failing to object on grounds of (1) improper lay opinion testimony; (2) inadmissible hearsay as to testimony on A.F.'s prior and out-of-court statements; (3) inadmissible hearsay as to testimony on Griffith's prior and out-of-court statements; (4) inadmissible hearsay as to testimony on Beaumont's prior and out-of-court statements; (5) improper testimony by Detective Cirina; (6) improper statements by the prosecutor during closing argument; and (7) improper references to A.F. as the "victim" by the prosecutor and prosecution witnesses. Resp't Ex. C at 26-84. Each ground is discussed below. Just as the state appellate court did on direct appeal, this Court will consider each instance of allegedly objectionable testimony or allegedly improper prosecutor's argument. *See Aknin*, 2013 WL 4016520, *7-24. As explained below, the state appellate court concluded that much of the testimony and argument that Petitioner challenges was proper. *Id.* at *7. The state appellate court also concluded that, even if trial counsel could have successfully objected in some instances, Petitioner failed to show prejudice because he had not demonstrated a reasonable probability that, but for counsel's alleged errors, the result of the trial would have been different. *Id.* (citing *Strickland*, 466 U.S. at 687-688, 694; *People v. Carter*, 30 Cal. 4th 1166, 1211 (2003)).

### 1)      Allegedly Improper Lay Opinion Testimony

The state appellate court gave the following background and applicable law relating to the prosecution's presentation of allegedly improper lay opinion testimony about A.F.'s truthfulness:

> Aknin contends that some of the prosecution's lay witnesses—Police Officers David Gilbert and Jesse Bets, Detective David Cirina, and sexual-assault examiner Victoria Galanter—improperly opined that A.F. told the truth in pretrial conversations. A lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of the witness's testimony. (Evid. Code, § 800; *People v. Farnam* (2002) 28 Cal. 4th 107, 153.) Aknin cites cases holding a lay witness's opinion about the veracity of another person's particular statements is irrelevant and inadmissible on the issue of the statements' credibility. (See *People v. Melton* (1988) 44 Cal. 3d 713, 744; *People v. Zambrano* (2004) 124 Cal. App. 4th 228, 239-240; *People v. Sergill* (1982) 138 Cal. App. 3d 34, 39-40; but see

*People v. Riggs* (2008) 44 Cal. 4th 248, 300 [noting Supreme Court has not decided whether this aspect of Melton survived Prop. 8].) However, a court may, in its discretion, permit questions to a witness about whether another person is telling the truth, if the witness to whom the questions are addressed "has personal knowledge that allows him [or her] to provide competent testimony that may legitimately assist the trier of fact in resolving credibility questions." (*People v. Chatman* (2006) 38 Cal. 4th 344, 384.) For instance, lay opinion testimony regarding the veracity of a statement made by a defendant or other witness "may be appropriate when necessary to clarify a particular line of testimony." (*Zambrano* at p. 242.)

*Aknin*, 2013 WL 4016520, *8. As discussed below, the following IAC claims relate to trial counsel's failure to object to allegedly improper lay opinion testimony by: (a) Officer Gilbert; (b) Officer Bets; (c) Detective Cirina; and (d) Sexual Assault Examiner Galanter.

### a) Officer Gilbert

The state appellate court gave the following background and then rejected the IAC claim as it related to Officer Gilbert, as follows:

After the incident, A.F. traveled to Las Vegas, and on August 26 (four days after the incident) she approached Las Vegas Police Officer Gilbert and asked "for some help to get away from her pimp."

At trial, Gilbert first testified about A.F.'s visible injuries, including her "completely bright red" eyes and dark bruising on her neck and shoulders. He testified that there were finger marks on her neck, and that, based on experience, he believed the injuries were a few days old. Gilbert asked A.F. if her pimp had caused the injuries, and at trial the prosecutor asked Gilbert about A.F.'s response:

"Q. And what if anything did she say?

"A. She actually discussed quite in length. I felt she was trying to protect her pimp who was referred to as 'Gorilla' and you know being a cop I wanted to look into it and so I pressed her pretty hard. I thought that she was trying to protect him. I watched her and she kept looking out towards the Boulder Highway of the Fremont area and I kind of thought that he was maybe in the area and she was afraid to say anything. So we talked quite a bit and she convinced me that it was not him and it didn't happen recently. She told me that it was up here in California—I hope I get this right—she said it was in Redwood City where she was raped and beaten and I pretty much took her word after that because I didn't feel like as if she was lying at all."

Aknin recognizes that the prosecutor did not directly ask Gilbert to opine about A.F.'s veracity, but he argues that defense counsel was ineffective for not moving to strike Gilbert's statement that he did not feel as if A.F. had been lying. We are not convinced.

1
2
3
4
5
6
7

> To begin with, Gilbert's unsolicited comment that he did not feel as if A.F. had been lying was not as much an opinion about whether A.F. was telling the truth as it was a statement of Gilbert's personal view of A.F.'s story (at the time he heard it) to explain why he accepted A.F.'s statement about the injuries. Furthermore, the comment was made in the context of a long answer that was at least partially helpful to Aknin's defense. Gilbert's testimony that he "pressed" A.F. "pretty hard" reinforced the notion that prostitutes protect pimps by not being truthful (suggesting the possibility that A.F. would be untruthful in this case to protect her pimp), and his testimony about A.F.'s injuries reinforced the notion that pimps hurt their prostitutes (suggesting the possibility that A.F.'s injuries were caused or worsened by her pimp).

8   *Id.* at *8. Although Officer Gilbert's testimony as to the victim's truthfulness could have been

9   ruled to be inadmissible had trial counsel objected, the state appellate court reasonably determined

10  such testimony was not prejudicial because it was "partially helpful to [Petitioner's] defense." *Id.*

11  As described above, the state appellate court reasonably determined that the unsolicited comment

12  by Officer Gilbert could have also "reinforced the notion that pimps hurt their prostitutes" and

13  thus suggested that A.F.'s injuries were not caused by Petitioner but instead either "caused or

14  worsened by her pimp." *Id.* Thus, the state appellate court was reasonable in rejecting

15  Petitioner's claim that trial counsel was ineffective for not moving to strike Officer Gilbert's

16  aforementioned testimony. Moreover, Officer Gilbert's testimony did not preclude the defense

17  from making all of its arguments challenging the victim's credibility.

18          Furthermore, in the context of the overwhelming evidence against Petitioner at trial, there

19  was no reasonable likelihood that Officer Gilbert's testimony made a difference in the outcome of

20  the trial. The record shows that A.F. testified that she was naked from the waist down when she

21  regained consciousness. Her testimony was corroborated by Griffith and Beaumont, who both

22  testified that A.F. was not wearing any pants when they saw her. The record further shows that

23  A.F. was using a tampon that evening, but it was removed during her encounter with Petitioner.

24  Griffith testified that, when he left his room and went outside the motel, he encountered Petitioner,

25  who was on the ground making what appeared to be digging or swimming motions with his arms,

26  or possibly even looking like he might be having a seizure. Other evidence presented to the jury

27  showed A.F. had significant injuries when she was treated at the Keller Center shortly after her

28  encounter with Petitioner. There was no direct evidence that anyone other than Petitioner caused

1   the injuries.  And, even according to Petitioner's own testimony, he grabbed A.F. by the neck, fell

2   with her to the ground, and pushed up on her while still holding her neck.  In light of this evidence

3   and the evidence that there was sexual contact of some type between Petitioner and A.F., the jury

4   reasonably could infer that Petitioner assaulted A.F., and then attempted to have intercourse with

5   her and achieved at least slight penetration.  As a result, the state appellate court reasonably

6   concluded that trial counsel's failure to object to Officer Gilbert's testimony was not prejudicial

7   under *Strickland*.  Accordingly, relief on this claim is DENIED.

8                               **b)  Officer Bets**

9          The state appellate court gave the following background and then rejected the IAC claim as

10  it related to Officer Bets, as follows:

11                 Redwood City Police Officer Jesse Bets interviewed A.F.
            shortly after the incident.  At the trial, the prosecutor asked Bets
12          about the interview and asked whether Bets had doubts about A.F.'s
            statement that she was visiting a friend and had gotten lost while
13          walking around Redwood City at night because she wanted to see
            the area.  Bets doubted A.F.'s explanation and believed she was a
14          prostitute.     The prosecutor asked whether Bets also found
            inconsistent the part of A.F.'s story that she had been thrown to the
15          ground and strangled.  Bets responded that he thought that this
            portion of A.F.'s account might have been true; he testified A.F.'s
16          injuries and emotional state were consistent with someone who had
            just been attacked.

17
                   We do not believe it was objectively unreasonable for
18          defense counsel to have refrained from objecting to these answers.
            Bets did not just testify that he thought A.F. was truthful; he first
19          testified that he believed she had been untruthful when she told him
            she was visiting a friend and got lost after exploring the area.  This
20          testimony helped Aknin and, after accepting the benefits of it,
            defense counsel would have been hard pressed to object to the
21          subsequent comment about her perceived truthfulness.

22                 Furthermore, even assuming counsel should have objected to
            Bets's response that he thought part of A.F.'s story might have been
23          true, Aknin has not shown his failure to do so was prejudicial.  Bets
            already had testified that when he spoke to A.F. she was crying
24          uncontrollably and had fresh abrasions on her shoulder.  And the
            jury heard other testimony and saw other evidence that A.F.'s
25          injuries (including bleeding and bruising inside her eyes, bleeding
            inside her mouth, and bruising on her neck) were consistent with
26          strangulation.  Bets's comment that A.F.'s statement that she was
            attacked may have been true and was consistent with her injuries
27          and demeanor, added little to this testimony and evidence.

28  *Aknin*, 2013 WL 4016520, *8-9.

Petitioner has failed to demonstrate that the state appellate court's denial of this IAC claim was an unreasonable application of *Strickland*. First, the state appellate court reasonably concluded that Officer Bets's testimony was actually beneficial to the defense when he first testified that he believed A.F. had been *untruthful* when she told him she was visiting a friend and got lost after exploring the area. In light of such testimony, trial counsel could have made the strategic choice not to object to Officer Bets's subsequent testimony about A.F.'s truthfulness. Reasonable strategic choices by counsel such as this are "virtually unchallengeable" on federal habeas corpus review. *Strickland*, 466 U.S. at 690; *see also Matylinsky v. Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009) (the court may "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight . . . ."). Even if Petitioner could demonstrate that trial counsel was deficient, the state appellate court reasonably found that he had still failed to show prejudice, especially in light of the fact that significant evidence existed to implicate Petitioner, as explained above. As the state appellate court reasonably found, Officer Bets's subsequent comment relating to the truthfulness of A.F.'s testimony that she was attacked was "consistent with her injuries and demeanor." *Aknin*, 2013 WL 4016520, *9. This Court therefore finds that there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Accordingly, Petitioner is not entitled to relief on this IAC claim, and it is DENIED.

### c)  Detective Cirina

The state appellate court gave the following background and then rejected the IAC claim as it related to Detective Cirina, as follows:

> David Cirina, the lead Redwood City detective investigating the case, interviewed A.F. at the Keller Center where her sexual-assault examination took place. A.F. was still crying and shaking. After talking for a few minutes to build rapport, Cirina told A.F. he did not believe her story about why she was out that night, and A.F. admitted she had been working as a prostitute. Cirina then conducted an official interview. The prosecutor asked about the interview:
>
> "Q. Can you tell me a little bit about her demeanor and what she was like during the time that you were talking to her in the Keller interview?

United States District Court
Northern District of California

> "A. She remained upset, seemed to calm down and focus once the interview began and she certainly appeared to be forthcoming and honest from that point on."
>
> The prosecutor's question about A.F.'s demeanor did not ask for Cirina's opinion of her veracity, so it was not objectionable on that ground and could even have elicited favorable testimony, which Aknin appears to concede.  The response was less an opinion of A.F.'s truthfulness than a statement of Cirina's personal interpretation of her demeanor.  Rather than stating a definitive opinion that A.F.'s account was true, Cirina instead simply stated in the context of describing her demeanor she "appeared to be forthcoming and honest" and answered all his questions.
>
> Even assuming that the unsolicited comment constituted an opinion that Aknin's counsel could have successfully had stricken, Aknin has not shown counsel's failure to move to strike it was prejudicial.  Cirina's testimony about A.F. at the Keller Center benefitted the defense in connection with the rape charge because A.F. admitted that she did not know whether she had been sexually assaulted.  Her credibility on this point furthered the defense's argument that there was no sexual assault.

*Aknin*, 2013 WL 4016520, *9.  The state appellate court reasonably rejected this claim upon finding that Detective Cirina's unsolicited comment regarding A.F. appeared "forthcoming and honest" at the interview was merely a "personal interpretation of her demeanor."  *See id.*  In any event, even if such a comment constituted an "opinion of A.F.'s truthfulness" which trial counsel could have successfully had stricken, the state appellate court reasonably found no prejudice, as explained above.  *See id.*  Accordingly, relief on this claim is DENIED.

### d)  Sexual-Assault Examiner Galanter

The state appellate court gave the following background and then rejected the IAC claim as it related to Sexual-Assault Examiner Galanter, as follows:

> Victoria Galanter, a sexual-assault examiner, testified that part of the examination procedure is to determine whether the physical findings are consistent with the history provided by a victim.  The prosecutor asked her whether the physical evidence was consistent with A.F.'s account in this case.
>
> "Q. Okay.  And in this case, after you did your examination and you completed all of the work that you did with [A.F.], did you determine whether or not all the physical findings that you had were consistent with the history she had given you about being strangled?
>
> "A. Yes, it was consistent.
>
> "Q. Was there anything inconsistent in the evidence and her description of what had happened?

31

"A. No."

Aknin argues that this was inadmissible opinion testimony because Galanter "in effect told the jury she also believed [A.F.'s] account." We disagree. Galanter was not asked to, and did not, opine whether A.F. was credible or was telling the truth. Instead, Galanter, who had personally examined A.F.'s physical injuries, had training and experience examining sexual-assault victims, and was familiar with the types of injuries caused by strangulation, simply stated that the physical injuries she observed were consistent with A.F.'s report of being strangled. Because this testimony was based on Galanter's personal knowledge and could assist the trier of fact in assessing A.F.'s credibility, the trial court would have had discretion to admit it even if counsel had objected. (See *People v. Chatman*, *supra*, 38 Cal. 4th at p. 384 [court may permit witness with personal knowledge to provide "competent testimony that may legitimately assist the trier of fact in resolving credibility questions"]; *People v. Sergill*, *supra*, 138 Cal. App. 3d at p. 40 ["relevant evidence includes evidence that has any tendency in reason to affect the credibility of a witness"]; see also *People v. Zambrano*, *supra*, 124 Cal. App. 4th at p. 242.)

Furthermore, Aknin has not shown Galanter's response was prejudicial. Galanter already had provided testimony, which Aknin does not contend was inadmissible, that A.F.'s injuries were consistent with prolonged strangulation. Accordingly, this response was cumulative. For that reason as well, we do not believe it was objectively unreasonable for defense counsel to have refrained from objecting under these circumstances.

*Aknin*, 2013 WL 4016520, *9-10. Again, just as it had with Officer Cirina's aforementioned testimony, the state appellate court reasonably determined that Sexual-Assault Examiner Galanter's aforementioned testimony did not amount to inadmissible opinion testimony. *See id.* It was reasonable for the state appellate court to conclude that the sexual-assault examiner, who had "personally examined A.F.'s physical injuries, had training and experience examining sexual-assault victims, and was familiar with the types of injuries caused by strangulation," had merely stated that the physical injuries observed were consistent with A.F.'s report of being strangled. *See id.* In addition, the state appellate court was reasonable in finding that such testimony was not prejudicial because previous similar unchallenged testimony—i.e., that A.F.'s injuries were consistent with prolonged strangulation—had already been presented to the jury. *See id.* Therefore, habeas relief on Petitioner's IAC claim on this ground is DENIED because such a claim was reasonably rejected by the state appellate court.

United States District Court
Northern District of California

32

**2)  Prior and Out-of-Court Statements – A.F.**

As an introductory issue, the state appellate court gave the following background and

applicable law related to the prior consistent statements by A.F., Griffith, and Beaumont:

> Aknin contends his counsel was ineffective because he failed
> to object on hearsay grounds when prosecution witnesses testified
> about prior consistent statements by A.F., Griffith, and Beaumont.
> Aknin argues that introduction of the prior statements "unfairly
> provided credibility" to A.F. and Griffith.
>
> Hearsay evidence is "evidence of a statement that was made
> other than by a witness testifying at the hearing and that is offered to
> prove the truth of the matter stated" (Evid. Code, § 1200, subd. (a));
> hearsay evidence is inadmissible unless it falls within an exception
> to the hearsay rule (Evid. Code, §§ 1200, subd. (b), 1201).  Aknin
> argues the statements he now challenges were not admissible under
> the hearsay exception for prior consistent statements of a witness.
> Under that exception, a prior consistent statement of a witness is
> admissible if an express or implied charge has been made that the
> witness's testimony is recently fabricated or is influenced by bias or
> other improper motive, and the statement was made before the bias
> or improper motive is alleged to have arisen (Evid. Code, §§ 1236,
> 791, subd. (b)).  Aknin claims the statements he challenges were not
> admissible under this exception because the defense contended A.F.
> and Griffith had a motive to lie "from the point each participated in
> the charged incident," and their consistent pretrial statements were
> not made before this alleged motive arose.
>
> We conclude some of the testimony Aknin challenges was
> objectionable as inadmissible hearsay, but we also conclude that
> defense counsel's failure to object to it was not prejudicial.

*Aknin*, 2013 WL 4016520, *10-11.

This section focusses on the IAC claims relating to trial counsel's failure to object to the

following witnesses' testimony on A.F.'s prior and out-of-court statements: (a) Officer Gilbert;

(b) Officers Bets and Unga; (c) Sexual-Assault Examiner Galanter; (d) Beaumont; and

(e) Detective Cirina.

**a)  Officer Gilbert**

The state appellate court gave the following background and then rejected the IAC claim as

it related to Officer Gilbert's testimony on A.F.'s prior statements, as follows:

> As we discussed above, Las Vegas Police Officer Gilbert
> testified that when A.F. asked him for help to get away from Gorilla,
> she told him that her visible injuries came from having been beaten
> and raped in Redwood City by someone other than Gorilla.  Aknin
> argues that defense counsel should have objected to Gilbert's
> testimony about A.F.'s response because it constituted inadmissible

33

1

2

3

4

5

hearsay.  A.F.'s response arguably was relevant to the nonhearsay purpose of showing Gilbert's state of mind and subsequent actions, i.e., he did not question A.F. further about whether Gorilla caused her injuries (although he did arrest Gorilla for traffic violations). (See Evid. Code, § 1200, subd. (a); *People v. Hill* (1992) 3 Cal. 4th 959, 987 [statements offered to explain hearer's state of mind and conduct are not hearsay], disapproved on other grounds in *Price v. Superior Court* (2001) 25 Cal. 4th 1046, 1069, fn. 13; 1 Jefferson, Cal. Evidence Benchbook (4th ed. 2013) § 1.35, p. 26.)

6

7

8

9

10

11

12

But even assuming counsel could have successfully objected to this testimony on hearsay grounds, Aknin has not shown his failure to do so was prejudicial.  A.F.'s statement she wanted to get away from her pimp was potentially helpful to Aknin.  It was consistent with his argument that her pimp was violent and could have caused the injuries, a theme Aknin's counsel explored while cross-examining Gilbert.  A.F.'s statement she was beaten and raped in Redwood City (rather than later, by Gorilla) also was not likely to be prejudicial because other evidence showed A.F. had significant injuries when she was treated at the Keller Center shortly after her encounter with Aknin.  There was no direct evidence that anyone other than Aknin caused the injuries.  And, even according to Aknin's own testimony, he grabbed A.F. by the neck, fell with her to the ground, and pushed up on her while still holding her neck.

13

*Aknin*, 2013 WL 4016520, *11.  Petitioner has failed to demonstrate that the state appellate court's

14

denial of this IAC claim was an unreasonable application of federal authority.  First, the state

15

appellate court reasonably concluded that A.F.'s response to Officer Gilbert (regarding being beat

16

and raped by someone *other than* her pimp) was relevant to the nonhearsay purpose of showing

17

Officer Gilbert's "state of mind and subsequent actions, i.e., he did not question A.F. further about

18

whether Gorilla caused her injuries."  *See id.*  Second, even assuming trial counsel could have

19

successfully objected to Officer Gilbert's aforementioned testimony on hearsay grounds, the state

20

appellate court was reasonable in concluding Petitioner has not shown counsel's failure to do so

21

was prejudicial because (1) A.F.'s statement she wanted to get away from her pimp was

22

potentially helpful to Petitioner; and (2) A.F.'s statement she was beaten and raped in Redwood

23

City was corroborated by other evidence showing A.F. was treated for significant injuries shortly

24

after her encounter with Petitioner.  *See id.*  And finally, again, there was overwhelming evidence

25

implicating Petitioner to A.F.'s assault and rape.  Therefore, the IAC claim was reasonably

26

rejected, and relief on this claim is DENIED.

27

**b)  Officers Bets and Unga**

28

With respect to the IAC claim as it related to Officers Bets's and Unga's testimony on

1    A.F.'s prior statements, the state appellate court gave background on this claim and held as

2    follows:

3              As mentioned above, Officer Bets spoke to A.F. shortly after
         the incident.   A.F. told Bets she was grabbed from behind and
4        choked until she lost consciousness, and when she woke up her
         pants had been removed.  A.F. provided Bets with a description of
5        her assailant, which he radioed to other officers.  A.F. told Bets she
         was lost and asked Aknin for directions, that Aknin propositioned
6        her, and that she did not respond to Aknin because she was "'not
         that type of girl.'"
7
               Officer Steve Unga testified Bets stated over the radio that a
8        female victim said she had been raped and provided a description of
         the suspect.  While driving toward the scene, Unga saw Aknin (who
9        matched the description) and detained him.

10             Aknin has not shown his counsel was ineffective for failing
         to object to this testimony.  A.F.'s statements, whether made by her
11       or repeated by Bets, were likely admissible under the spontaneous-
         statements exception to the hearsay rule.  "Evidence of a statement
12       is not made inadmissible by the hearsay rule if the statement:   [¶]
         (a) Purports to narrate, describe, or explain an act, condition, or
13       event perceived by the declarant; and    [¶]    (b) Was made
         spontaneously while the declarant was under the stress of excitement
14       caused by such perception."  (Evid. Code, § 1240; see *People v.
         Thomas* (2011) 51 Cal. 4th 449, 495.)  Bets testified that, when he
15       spoke to A.F. shortly after the attack, she was upset and emotional
         and was crying uncontrollably, and her injuries were fresh.
16
               Moreover, Aknin has not shown prejudice.  Portions of the
17       testimony were helpful to the defense of the rape charge.  A.F. told
         Bets she was choked until she was unconscious, did not remember
18       anything that happened after that, and did not know whether she had
         been sexually assaulted, points that defense counsel underscored on
19       cross-examination.  Bets's testimony about A.F.'s false explanation
         of why she was in the neighborhood also was helpful to the defense
20       because it weakened A.F.'s credibility, a point defense counsel also
         pursued during cross-examination.
21
     *Aknin*, 2013 WL 4016520, *11-12.

22
         The state appellate court reasonable found that the aforementioned testimony at issue—

23   Officer Bets's testimony regarding his conversation with A.F. shortly after the incident and

24   Officer Ung's testimony that Officer Bets stated over the radio that a "female victim said she had

25   been raped"— was likely admissible under the spontaneous statement exception to the hearsay

26   rule.[13]  *See id.*  The state appellate court also reasonably found no prejudice because some portions

27

28   ───────────────────────────

         [13] As explained above by the state appellate court, California Evidence Code § 1240

                                        35

United States District Court
Northern District of California

of the challenged testimony were helpful to the defense, as explained above.  *See id.*  Therefore, habeas relief on this claim is DENIED because the IAC claim was reasonably rejected.

### c)  Sexual-Assault Examiner Galanter

The state appellate court gave the following background and then rejected the IAC claim as it related to Sexual-Assault Examiner Galanter's testimony on A.F.'s prior statements, as follows:

> Galanter testified about A.F.'s answers to questions Galanter asked as part of the sexual-assault examination.  A.F. stated she was having her menstrual period, had had sexual contacts in the days prior to the attack, and stated she "'had a tampon on.'"  A.F. told Galanter she got lost and asked for directions; she was grabbed from behind and choked until she passed out; and she did not know what happened after that.
>
> Aknin has not shown his counsel was prejudicially ineffective for failing to object to this testimony on hearsay grounds.  Portions of Galanter's testimony were helpful to the defense.  A.F. did not know what happened after she was choked and lost consciousness, a point defense counsel asked Galanter to reiterate during cross-examination.  A.F.'s statement that she got lost and asked for directions (instead of acknowledging she was working as a prostitute) assisted the defense argument that A.F. was not credible, and defense counsel had Galanter repeat that statement during cross-examination as well.  And A.F.'s statement she was menstruating was helpful to the defense, specifically the defense argument that the lack of blood on the condom and on Aknin's hands, penis, or

provides the state's hearsay exception for spontaneous statements:  "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."  Cal. Evid. Code § 1240.  For evidence to be admissible under § 1240, "(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been made before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it."  *People v. Poggi*, 45 Cal. 3d 306, 318 (Cal. 1988).  In considering the speaker's mental state, the "nature of the utterance—how long it was made after the startling incident and whether the speaker blurted it out, for example—may be important, but solely as an indicator of the mental state of the declarant.  The fact that a statement is made in response to questioning is one factor suggesting the answer may be the product of deliberation, but it does not ipso facto deprive the statement of spontaneity."  *People v. Farmer*, 47 Cal. 3d 888, 903-04 (Cal. 1989), *abrogated on other grounds by People v. Waidla*, 22 Cal. 4th 690 (Cal. 2000); *see, e.g., Farmer*, 47 Cal. 3d at 903-04 (statement made to police dispatcher by wounded crime victim was admissible under spontaneous statement exception to hearsay rule); *id.* (statements of victim who was bleeding and in great pain to responding police officer were admissible under spontaneous statement exception).

United States District Court
Northern District of California

scrotum undermined the sexual-assault charges.

*Aknin*, 2013 WL 4016520, *12.  The state appellate court reasonably concluded that trial counsel's failure to object to the aforementioned testimony was not prejudicial under *Strickland*.  As explained above, certain portions of the testimony aided Petitioner in his defense against the rape charge.  *See id.*  In addition, Sexual-Assault Examiner Galanter's testimony relating to A.F. not being forthcoming about being a prostitute helped the defense make arguments challenging her credibility.  *See id.*  And, as previously explained, there was overwhelming evidence against Petitioner at trial, and thus the state appellate court reasonably determined that no reasonable likelihood existed to show that the aforementioned testimony made a difference in the outcome of the trial.  *See id.*  Accordingly, this IAC claim was reasonably rejected by the state appellate court, and relief on this claim is DENIED.

### d)  Beaumont

The state appellate court gave the following background and then rejected the IAC claim as it related to Beaumont's testimony on A.F.'s prior statements, as follows:

> The prosecutor asked Beaumont whether A.F. had said anything about knowing or working with Griffith, and Beaumont answered "no."  Aknin contends his counsel should have objected on hearsay grounds.  Counsel was not deficient.  "'Hearsay evidence' is evidence *of a statement that was made* other than by a witness testifying at the hearing and that is offered to prove the truth of *the matter stated*."  (Evid. Code, § 1200, subd. (a), italics added; *People v. Zamudio* (2008) 43 Cal. 4th 327, 350 (*Zamudio*).)  Aknin appears to suggest that A.F.'s failure to say anything about whether she knew or was working with Griffith—i.e., her silence about these matters—constitutes "a statement that was made" for purposes of the hearsay rule.  (Evid. Code, § 1200, subd. (a).)  But "nonverbal conduct," such as a person's silence, constitutes a "'statement'" under the hearsay rule only if it was "intended by [the person] as a substitute for oral or written expression."  (*Id.*, § 225; *Zamudio* at p. 350.)  Because nothing suggests A.F. intended her failure to say anything about whether she knew or was working with Griffith to be "a substitute for oral or written verbal expression" (Evid. Code, § 225), Aknin's counsel was not deficient for failing to object to Beaumont's testimony on hearsay grounds.  (See *Zamudio* at p. 350; cf. *People v. Snow* (1987) 44 Cal. 3d 216, 227 ["nonassertive responses or reactions," such as defendant's lack of reaction upon hearing news of victim's death, are not hearsay].)

> Aknin also challenges the following portion of Beaumont's testimony:

> "Q. . . . And during the time that you were waiting for the

37

police to get there, what was [A.F.] doing?

> "A. She was sitting there and just talking and she said that 'This guy raped me. I tried to call for help.'"

> The prosecutor's question did not call for hearsay and therefore was not objectionable on that ground. And defense counsel was not deficient for failing to move to strike Beaumont's answer. A.F.'s statement to Beaumont (made shortly after the attack) likely was admissible as a spontaneous statement. (See Evid. Code, § 1240.) Aknin also has not shown prejudice. The jury probably did not give significant weight to Beaumont's testimony that A.F. told him she was raped because the jury had already heard testimony from A.F. and from Galanter that A.F. did not know what happened while she was unconscious.

*Aknin*, 2013 WL 4016520, *12-13. The state appellate court reasonably determined that Beaumont's testimony at issue did not amount to inadmissible hearsay, and thus that court was also reasonable in concluding trial counsel was not deficient for failing to object on hearsay grounds. *See id.* Furthermore, the state appellate court was reasonable in finding that no prejudice resulted because the jury had already listened to similar testimony from A.F. and Sexual-Assault Examiner Galanter. *See id.* Accordingly, no habeas relief is warranted, and this claim is DENIED.

### e) Detective Cirina

The state appellate court gave the following background and then rejected the IAC claim as it related to Detective Cirina's testimony on A.F.'s prior statements, as follows:

> Detective Cirina testified about his interview with A.F. and stated that A.F. told him she used Aknin's cellular phone to call Gorilla for assistance in getting away from Aknin. Aknin has not shown this testimony was prejudicial. Portions of the account A.F. gave to Cirina were potentially helpful to the defense. On cross-examination, defense counsel asked Cirina to repeat a number of A.F.'s statements, emphasizing such points as A.F.'s reluctance to admit she was engaged in prostitution and the fact she did not tell Cirina she knew she had been raped.

*Aknin*, 2013 WL 4016520, *13. While the state appellate court did not make any determinations relating to whether the aforementioned statements amounted to hearsay, it was reasonable for that court to conclude that such testimony was not prejudicial. *See id.* Thus, it was also reasonable for that court to find that trial counsel was not deficient for failing to object to Detective Cirina's testimony because some portions of his interview with A.F. aided the defense. *See id.*

1    Accordingly, habeas relief is DENIED.

2    **3)  Prior and Out-of-Court Statements – Griffith**

3          This section focusses on the IAC claims relating to trial counsel's failure to object to the

4    following witnesses' testimony on Griffith's prior and out-of-court statements: (a) Witness Frisby;

5    (b) Detective O'Gorman; (c) Parole Officer Babb; (d) Beaumont; and (e) Griffith's testimony on

6    his own statements.

7    **a)  Witness Frisby**

8          The state appellate court gave the following background and then rejected the IAC claim as

9    it related to Witness Frisby's testimony on Griffith's out-of-court statements, as follows:

10           Linda Frisby, a longtime friend of Griffith, testified about a
     telephone conversation she had with Griffith after he had chased and
11   caught up with Aknin.  Aknin argues that her testimony included
     inadmissible hearsay.  We conclude that Aknin has not shown his
12   counsel was ineffective for failing to object to this testimony.

13           First, Aknin contends Frisby testified that Griffith said he
14   never left California.  The cited testimony is as follows:

15   "Q. Did he ever tell you that he'd been out of California?

16   "A. No.  He couldn't go out of California because he had to wear an
     anklet.

17   "Q. And was he—

18   "A. That was the reason why we had to get permission all the time
     for him to go to Santa Rosa or even to go to Hayward because of the
19   anklet.

20   "Q. Okay.  So he never described for you having gone to Las
     Vegas?
21
     "A. No.
22
     "Q. Never been to Las Vegas?
23
     "A. No."
24
             Frisby thus responded that Griffith had not told her about
25   leaving California or about going to Las Vegas.  Aknin's counsel
     was not deficient for failing to object on hearsay grounds because
26   Frisby did not relate a "statement that was made" for purposes of the
     hearsay rule.  (Evid. Code, §§ 1200, subd. (a), 225; see *Zamudio*,
27   *supra*, 43 Cal. 4th at p. 350; cf. *People v. Snow*, *supra*, 44 Cal. 3d at
     p. 227.)  As for Frisby's statement about Griffith's ankle device,
28   even if construed as relating statements by Griffith, Aknin has not

shown prejudice.   The statement was potentially helpful to the defense (because it underscored that Griffith was a parolee) and, in any event, was peripheral to the central issues in the case.

Second, Aknin argues Frisby testified Griffith told her the gorilla tattoo on his back was to remind him of his heroin addiction, rather than because he was a pimp.   The prosecutor questioned Frisby as follows:

"Q. Did you ever know him to be known by the nickname of Gorilla?

"A. No.

"Q. Okay.  Ever hear that?

"A. No.

"Q. Now, do you know he has a—

"A. Yes, I do.

"Q. —tattoo on his back?

"A. Yes, I do.

"Q. Okay.   And has he ever explained to you what the meaning of that tattoo is?

"A. Yes.

"Q. What did he tell you?

"A. It was to remind him of the heroin addiction.

"Q. Okay.  The monkey on his back?

"A. The monkey on the back."

Aknin has not shown prejudice.  The most important point for the defense was that Griffith, for whatever reason, had a gorilla tattoo on his back, thus permitting the defense to argue he was A.F.'s pimp, Gorilla.  Whether Griffith had the tattoo on his back because of his heroin addiction or for some other reason was incidental.

Third, Aknin refers to Frisby's testimony that, after the incident, Griffith called her and asked whether he had done the right thing by chasing Aknin.  Most of this testimony (i.e., Griffith's questions to Frisby whether he had done the right thing) was not objectionable as hearsay because it was not offered to prove the truth of the matter stated.  (See Evid. Code, § 1200, subd. (a).)  As for Griffith's statement he had chased a man he believed had committed a rape, that was undisputed, so Frisby's testimony to that effect was not prejudicial.

United States District Court
Northern District of California

Fourth, Aknin notes Frisby's testimony that Griffith told her he did not know A.F. before the night of the incident.   The prosecutor questioned Frisby as follows:

"Q. Did Eddie ever tell you that he knew the woman before—whether or not he knew the woman before he had seen her at the 7-Eleven?

"A. No, he never knew her.

"Q. He told you he did not know her?

"A. He told me he didn't know her."

Defense counsel may have been able to object successfully to this testimony on hearsay grounds, as the prosecutor asked Frisby to recount, and Frisby did recount, Griffith's statement.   The response also could have had some prejudicial impact because it bolstered Griffith's testimony that he had not met A.F. before seeing her in the 7-Eleven store.   But, assuming the response was potentially prejudicial to Aknin, we conclude later in this opinion that Aknin has not shown a reasonable probability that, but for counsel's alleged errors in not objecting to this and other items of evidence, the result of the trial would have been different.   (See *Strickland*, *supra*, 466 U.S. at pp. 687-688, 694; *Carter*, *supra*, 30 Cal. 4th at p. 1211.)

Fifth, Aknin contends Frisby testified that Griffith said he was not involved in prostitution.   The exchange was as follows:

"Q. Okay.   Have you ever known Eddie to be involved in any kind of prostitution?

"A. No.

"Q. Has he ever told you anything about being involved in any prostitution?

"A. No."

Aknin's counsel was not deficient for failing to object on hearsay grounds because Frisby did not relate a "statement that was made" for purposes of the hearsay rule.   (Evid. Code, §§ 1200, subd. (a), 225; see *Zamudio*, *supra*, 43 Cal. 4th at p. 350; cf. *People v. Snow*, *supra*, 44 Cal. 3d at p. 227.)

*Aknin*, 2013 WL 4016520, *13-14.  Out of all the statements analyzed above, the state appellate court reasonably found that trial counsel may have been able to object successfully on hearsay grounds to Witness Frisby's testimony that Griffith told her he had not previously met A.F.  *See id.*  However, even assuming such testimony bolstered Griffith's testimony and was prejudicial, the state appellate court reasonably concluded that Petitioner has not shown a reasonable

41

1   probability that, but for such an error, the result of the trial would have been different.  *See id.*

2   (citing *Strickland*, 466 U.S. at 687-688, 694; *Carter*, 30 Cal. 4th at 1211).  All remaining

3   statements were reasonably determined by the state appellate court to be either not amounting to

4   hearsay or not prejudicial.  Accordingly, habeas relief on this IAC claim is DENIED.

5   **b)  Detective O'Gorman**

6   The state appellate court gave the following background and then rejected the IAC claim as

7   it related to Detective O'Gorman's testimony on Griffith's out-of-court statements, as follows:

8   > Redwood City Police Detective Joseph O'Gorman spoke to
9   > Griffith at the scene, after Griffith had chased Aknin and was
    > detained by police.  O'Gorman also testified Griffith was still "out
10  > of breath" and "excited."  O'Gorman testified Griffith told him he
    > heard a commotion, went out of his room, and saw a man moving on
    > the ground; the man got up and ran; Griffith saw a woman on the
11  > ground; and Griffith chased the man.  Aknin has not shown his
12  > counsel was prejudicially ineffective for failing to object to this
    > testimony.  Some or all of Griffith's statements to O'Gorman were
13  > likely admissible as spontaneous statements.  (See Evid. Code,
    > § 1240.)

14  > Moreover, Aknin has not shown O'Gorman's testimony was
15  > prejudicial.  The testimony supported the defense position that
    > Griffith provided shifting and incomplete accounts of the incident.
16  > O'Gorman testified Griffith did not say he had threatened to shoot
    > Aknin while he chased him; instead, Griffith claimed Aknin had
    > threatened to shoot him.  (At trial, Griffith testified that, although he
17  > did not have a gun, he yelled that he had one and threatened to shoot
18  > Aknin if he did not stop.)  Griffith initially told O'Gorman he had
    > never seen the woman he believed had been raped; he then changed
    > his story to say he might have seen her in the 7-Eleven store.
19  > Defense counsel explored these points on cross-examination.

20  *Aknin*, 2013 WL 4016520, *14.  The state appellate court reasonably determined that the

21  aforementioned testimony either amounted to being admissible as spontaneous statements or was

22  not prejudicial.  *See id.*  Therefore, the IAC claim was reasonably rejected by that court, and

23  habeas relief is DENIED.

24  **c)  Parole Officer Babb**

25  The state appellate court gave the following background and then rejected the IAC claim as

26  it related to Parole Officer Babb's testimony on Griffith's out-of-court statements, as follows:

27  > Griffith's parole officer, Mark Babb, testified that Griffith
    > never discussed Las Vegas or requested permission to go there.
28  > Aknin's counsel was not deficient for failing to object on hearsay

United States District Court
Northern District of California

United States District Court
Northern District of California

1  grounds because Babb did not relate a "statement that was made" for purposes of the hearsay rule.  (See Evid. Code, §§ 1200, subd. (a),

2  225; *Zamudio*, *supra*, 43 Cal. 4th at p. 350; cf. *People v. Snow*, *supra*, 44 Cal. 3d at p. 227.)

3  Griffith met with Babb on August 22, 2008.  The prosecutor

4  asked whether Griffith told Babb "about the event that had happened the evening before[.]"  Babb replied that Griffith had done so and

5  described his demeanor as emotional and somber.  The testimony was not hearsay because Babb did not recount Griffith's statements.

6  *Aknin*, 2013 WL 4016520, *15.  The state appellate court reasonably found that the

7  aforementioned testimony was admissible because it did not amount to hearsay, and that trial

8  counsel was not deficient for failing to object to such testimony.  *See id.*  Accordingly, habeas

9  relief is DENIED.

10                                            **d)  Beaumont**

11         The state appellate court gave the following background and then rejected the IAC claim as

12  it related to Beaumont's testimony on Griffith's out-of-court statements, as follows:

13                 In response to the prosecutor's questions, Beaumont testified Griffith did not say he knew A.F. or Aknin before the incident,

14                 Griffith did not say he had lived in Las Vegas, and A.F. did not say she knew Griffith or was working with him.  Aknin's counsel was

15                 not deficient for failing to object on hearsay grounds because Beaumont did not relate a "statement that was made" for purposes of

16                 the hearsay rule.  (See Evid. Code, §§ 1200, subd. (a), 225; *Zamudio*, *supra*, 43 Cal. 4th at p. 350; cf. *People v. Snow*, *supra*, 44

17                 Cal. 3d at p. 227.)

18  *Aknin*, 2013 WL 4016520, *15.  The state appellate court reasonably found that the

19  aforementioned testimony did not amount to inadmissible hearsay, and that trial counsel was not

20  deficient for failing to object to such testimony.  *See id.*  Accordingly, habeas relief on this IAC

21  claim is DENIED.

22                                    **e)  Griffith's Own Statements**

23         The state appellate court gave the following background and then rejected the IAC claim as

24  it related to Griffith's testimony on his own out-of-court statements, as follows:

25                 Aknin contends Griffith testified about his own prior hearsay statements.  Griffith testified that, when he was detained by the

26                 police, he answered all their questions, told them about his parole status, and told them about the events to which he had testified at

27                 trial, except he did not tell them he had threatened Aknin while chasing him.  The prosecutor then questioned Griffith about why he

28                 had not told the police about his threat.  Aknin has not shown this

                                                    43

1
2
3

> testimony was prejudicial.  The testimony was phrased in general terms (i.e., Griffith did not repeat his account of chasing Aknin). Moreover, testimony about what Griffith did and did not tell the police was potentially helpful to the defense because it highlighted Griffith's failure to admit he had threatened Aknin.

*Aknin*, 2013 WL 4016520, *15.  The state appellate court reasonably found that the

aforementioned testimony was not prejudicial, and that trial counsel was not deficient for failing to

object to such testimony.  *See id.*  Accordingly, habeas relief on this IAC claim is DENIED.

### 4)  Prior and Out-of-Court Statements – Beaumont

This section focusses on the IAC claim relating to trial counsel's failure to object to a

Redwood City police officer's testimony on Beaumont's out-of-court statements.  The state

appellate court gave the following background and then rejected this IAC claim, as follows:

> Redwood City Police Officer Walter Montti testified about his interview of Beaumont at the scene of the incident.  Beaumont stated he and Griffith went outside to buy cigarettes; a white male with a ponytail ran by; Griffith yelled, "'Hey, you rapist,'" and began chasing the man; a woman called for help; the woman's face was bloody, and she was nude from the waist down; Beaumont gave her a pair of pants; and the woman said the man with the ponytail had choked her.

> Aknin has not shown his counsel's failure to object to this testimony was prejudicial.  Beaumont's testimony and statements were largely cumulative of other testimony in the case.  Further, the inconsistency between Beaumont's statements to Montti (reporting only that A.F. said she was choked) and Beaumont's trial testimony (that A.F. said she was raped) potentially weakened Beaumont's reliability as a witness and thus assisted the defense.  In closing argument, defense counsel argued Beaumont was an unreliable witness whose story changed over time.

*Aknin*, 2013 WL 4016520, *15.  The state appellate court reasonably found that the

aforementioned testimony was not prejudicial because it was cumulative of the other testimony in

the case, and that court was also reasonable in determining that trial counsel was not deficient for

failing to object to such testimony.  *See id.*  Accordingly, habeas relief on this claim is DENIED.

### 5)  Allegedly Improper Testimony by Detective Cirina

Next, the state appellate court gave the following introductory background and then

rejected the IAC claim as it related to allegedly improper testimony by Detective Cirina, as

follows:

> Aknin contends his counsel was ineffective because he failed to object when the prosecutor elicited inadmissible testimony,

including hearsay and opinion testimony, from Cirina. We disagree. Some of the testimony Aknin challenges was admissible. And, assuming counsel should have objected to some of the testimony, his failure to do so was not prejudicial.

*Aknin*, 2013 WL 4016520, *15. The state appellate court addressed six topics, which this Court discusses below.

### a) The Sexual-Assault Examination

First, the state appellate court gave the following background and then rejected the IAC claim as it related to improper testimony from Detective Cirina about the sexual-assault examination, as follows:

> Aknin contends that Cirina improperly opined or speculated that A.F. did not have a tampon inserted when she was examined at the Keller Center. This is incorrect. In the passage Aknin cites, Cirina did not give his opinion. Instead, he referred to the trial testimony of Galanter, the sexual-assault examiner, that A.F. stated she had a tampon inserted (and therefore Galanter wrote that on the form), but when Galanter conducted the physical examination, A.F. did not have a tampon inserted. ("Q. . . . Explain to us what that confusion was [about whether A.F. had a tampon inserted]. [¶] A. As Victoria Galanter testified to, she noted in her report that [A.F.] had a tampon on. When the exam began, she did not have a tampon in.")[FN 10]

> [FN 10:] In his reply brief, Aknin argues the testimony was hearsay. Aknin forfeited this argument by failing to raise it in his opening brief. (See *People v. Alexander* (2010) 49 Cal. 4th 846, 922.)

> Aknin also contends his counsel should have objected to Cirina's testimony that, during his later telephone conversations with A.F. about the tampon, she seemed confused and did not have a clear recollection on that issue. Although the court sustained defense counsel's objection to a question whether Cirina believed A.F. was "guessing," Aknin has not shown his counsel was deficient for failing to object to other questions that were more closely tied to Cirina's observations of A.F.'s demeanor, such as questions whether A.F. "seem[ed] certain" or "seem[ed] confused." In any event, Aknin has not shown prejudice, as evidence of A.F.'s confusion about the tampon was potentially helpful to the defense. Moreover, A.F.'s used tampon, which was found at the scene, showed she was menstruating, while the forensic tests from the condom and the swabs of Aknin's genitals lacked any indication of blood, assisting Aknin's argument that he had not raped A.F.

*Aknin*, 2013 WL 4016520, *16 (footnote in original). The state appellate court pointed to contrary trial testimony of the sexual-assault examiner and reasonably found that Petitioner was incorrect in his claim that Detective Cirina testified that A.F. did not have a tampon inserted when she was examined. *See id.* The state appellate court was also reasonable in determining that trial counsel

45

was not deficient in failing to object to the prosecution's questions tied to Detective Cirina's observations of A.F.'s demeanor and level of confusion about the tampon because such confusion was possibly helpful to the defense.  *See id.*  Finally, the state appellate court further reasonably found that even if trial counsel was deficient, Petitioner has not shown any prejudice because other physical evidence existed to show A.F. was menstruating, which assisted the defense in arguing Petitioner did not rape A.F.  *See id.*  Accordingly, this IAC claim was reasonably rejected by the state appellate court, and habeas relief is DENIED.

### b)  Detective Cirina's Telephone Call with Gorilla

Second, the state appellate court gave the following background and then rejected the IAC claim as it related to improper testimony from Detective Cirina about his telephone call with Gorilla, as follows:

> Both Aknin and A.F. testified that A.F. had used Aknin's cellular phone outside the 7-Eleven store.  A.F. said the number she had called on Aknin's cellular phone belonged to Gorilla.  During his direct examination at the trial, Cirina testified that he called this number.  Based on the voice of the man who answered, Cirina was sure the man was not Griffith.

> Aknin's counsel cross-examined Cirina about whether he had followed up on leads supporting the defense theory that Griffith was Gorilla or was working with A.F.

> On redirect, the prosecutor elicited Cirina's explanation why he had or had not followed certain leads identified by defense counsel.  As part of that examination, the prosecutor addressed the call to Gorilla and asked: "And [the person who answered] gave you no indication that he wasn't 'Gorilla,' correct?"  Cirina responded: "He said he was 'Gorilla.'"  The prosecutor asked: "You had no reason to believe that that person you were speaking with was not the person that [A.F.] had told you about?"  Cirina answered: "No, no reason whatsoever."

> Aknin contends his counsel should have objected to Cirina's testimony because it violated a pretrial ruling and included hearsay statements by Gorilla and improper opinion testimony by Cirina.[FN 11]

> [FN 11:] In his reply brief, Aknin suggests the testimony was improper because it included A.F.'s hearsay statement as to which telephone number was Gorilla's.  We decline to address this argument, which Aknin did not raise in his opening brief.  (See *People v. Alexander*, *supra*, 49 Cal. 4th at p. 922.)

> The pretrial ruling does not establish counsel was ineffective.  The pretrial ruling was entered after Aknin filed a motion in limine

to exclude hearsay testimony about the call. In the motion, Aknin described a number of statements, set forth in Cirina's police report, that the person who answered (Gorilla or Mike) made during the call.[FN 12]   Aknin argued in the motion that "[t]he statements contained in Detective Cirina's police report as summarized above are clearly hearsay," and he requested an order "precluding any hearsay testimony from Detective Cirina regarding alleged conversations with 'Mike' A.K.A. 'Gorilla.'"   At a hearing on the motions in limine, the court stated it would "preclude Detective Cirina from making any statements regarding a conversation between himself and Mike or Gorilla . . . . [u]ntil some theory that would demonstrate either non-hearsay or exception to the hearsay rules becomes clear. And then we will do that outside the presence of the jury."

[FN 12:] According to the motion, Gorilla told Cirina he was in Redwood City on the night of the incident and received a telephone call from A.F. just after midnight. He heard an aggravated male voice in the background say something like "'Come on!'"   When Gorilla saw A.F. the next day, she had visible choke marks on her neck, which she said were the result of being choked until she "'blacked out.'"   A.F. told Gorilla that, when she woke up, her clothes were gone.

Although the court phrased its oral ruling broadly, it appears the parties understood the ruling not as precluding any testimony about the call but as precluding evidence of statements allegedly made by Gorilla during the call (which were the focus of Aknin's motion). At trial, the prosecutor confirmed Cirina was not to discuss the substance of the conversation. ("Q. Okay. You're not allowed to talk about what specifically was engaged in that conversation, correct? [¶] A. Right.")   Defense counsel's failure to object on the ground that Cirina's testimony violated the court's ruling suggests he shared the prosecutor's understanding of the scope of the ruling, which was reasonable in light of the motion's focus on Gorilla's alleged statements. Defense counsel was not deficient for failing to object to all testimony about the call on the ground it violated the pretrial ruling.

Aknin's counsel also was not deficient for failing to object to Cirina's opinion that, based on the voice of the person who answered, he was sure the person was not Griffith. As noted, a lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of the witness's testimony. (Evid. Code, § 800; *People v. Farnam*, *supra*, 28 Cal. 4th at p. 153.) Cirina's opinion was based on his perception—he had spoken with the person who answered the telephone, and he had spoken with Griffith. Cirina's opinion also was helpful to a clear understanding of his testimony about such matters as his efforts to locate Gorilla and the calls between Aknin's telephone and Gorilla's number.

We acknowledge Cirina's testimony that the person on the telephone "said he was 'Gorilla'" may have been hearsay or improper under the court's pretrial ruling.   The prosecutor's question (i.e., whether the person who answered "gave you no

indication that he wasn't 'Gorilla,' correct?") did not expressly call for hearsay, so counsel was not deficient for failing to object on that ground.  Assuming counsel should have moved to strike Cirina's response, his failure to do so could have had some prejudicial impact.  As the Attorney General notes, the prosecutor did not follow up by asking Cirina to relate the substance of the conversation, and she later reminded him he was not to do so.  But, as Aknin points out, the prosecutor emphasized this testimony in closing argument, stating: "[Detective] Cirina talked to him on the phone, and he admitted that he was 'Gorilla.'"  Assuming this response was potentially prejudicial to Aknin, we conclude later in this opinion that Aknin has not shown a reasonable probability that, but for counsel's alleged errors in not objecting to this and other items of evidence, the result of the trial would have been different. (See *Strickland*, *supra*, 466 U.S. at pp. 687-688, 694; *Carter*, *supra*, 30 Cal. 4th at p. 1211.)

Finally, counsel was not deficient for failing to object to Cirina's testimony that (1) he had no reason to believe the person on the telephone was not A.F.'s pimp, and (2) nothing he learned in his investigation, including on the call in question, led him to believe Griffith was the pimp or was working with A.F.  This testimony did not recount statements by Gorilla, so counsel was not deficient for failing to object on hearsay grounds or on the basis that the testimony violated the pretrial ruling.  This evidence also was not improper opinion testimony.  Cirina testified on these points during redirect examination, after Aknin's counsel had cross-examined Cirina about the adequacy of his investigation.  To the extent Cirina stated opinions, he was explaining the views he held at different points in the investigation, which were relevant to why he did or did not pursue certain leads.  Such opinions were based on Cirina's perception and were helpful to a clear understanding of his testimony.[MM 13 (See Evid. Code, § 800.)]

*Aknin*, 2013 WL 4016520, *16-17 (footnotes in original).  As explained above, Petitioner takes issue with Detective Cirina blurting out a hearsay statement that he spoke with someone by phone named Mike Smith, who said that he was known as "Gorilla."  *See id.*  The state appellate court noted that the prosecution's question eliciting such a response from Detective Cirina—as to whether the person who answered the phone call "gave [Detective Cirina] no indication that he wasn't 'Gorilla,' correct?"— did not call for hearsay.  *See id.*  That court then stated that the testimony could have had some prejudicial effect, but that there was no reasonable probability of a more favorable result had counsel moved to strike it.  *See id.*  The alleged hearsay statement had no bearing on the substantive issues in the case.  There was no dispute that Petitioner had sexual contact with A.F.  Petitioner admitted as much and the physical evidence showed that he had some type of sexual contact with A.F.  A.F.'s injuries were well documented.  Detective Cirina's

statement of that Smith told him he was known as "Gorilla" had no bearing on the evidence of strangulation, the findings at the scene, or whether penetration was completed. To the extent the alleged hearsay statement from Smith might have a bearing on whether Griffith was A.F.'s pimp, there was a significant amount of evidence from which the jury could reasonably conclude that Griffith was not her pimp, so the hearsay statement was, if anything, cumulative of other evidence in the record. Thus, the state appellate court reasonably concluded that there was no reasonable probability of a more favorable result had trial counsel objected. Further, to the extent that Petitioner argues that Detective Cirina stated opinions, the state appellate court reasonably found that this detective was explaining the views he held at different points in the investigation, which were relevant to why he did or did not pursue certain leads. *See id.* Such opinions were based on Detective Cirina's perception and were helpful to a clear understanding of his testimony. Accordingly, habeas relief on this IAC claim is DENIED.

### c) A.F.'s Injuries

Third, the state appellate court gave the following background and then rejected the IAC claim as it related to improper testimony from Detective Cirina about A.F.'s injuries, as follows:

> Aknin contends Cirina's testimony included hearsay and improper opinions about the source of A.F.'s injuries. We disagree.
>
> During recross-examination, defense counsel, continuing his inquiry into the adequacy of the police investigation, asked Cirina if he had considered whether A.F.'s pimp Gorilla, rather than Aknin, might have caused A.F.'s injuries. Counsel elicited that Cirina was "aware" that pimps often physically abuse prostitutes and that prostitutes often protect their pimps from law enforcement. Defense counsel also asked: "So *did it ever occur to you* that [A.F.'s] injuries could have been caused by 'Gorilla' also known as Mike Smith, either before or after the encounter with Mr. Aknin?" (Italics added.) Counsel also asked: "*It didn't occur to you*, though, that when [A.F.] went back to Las Vegas, she may have been harmed by Mike Smith, also known as 'Gorilla'?" (Italics added.) Cirina answered that, when he interviewed A.F. shortly after the incident, her injuries were fresh; when he dropped her off at her motel several hours after photographs of her injuries were taken, the injuries already looked worse than in the photographs; and, based on his training and experience, such injuries worsen over time, which he believed explained the more extensive visible injuries observed by Officer Gilbert several days later.
>
> On re-redirect examination, the prosecutor followed up on this line of questioning by asking Cirina whether, at the time he first

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7

interviewed A.F., he had any reason to believe Gorilla had harmed her. ("Q. . . . And did you have any reason to believe on the evening that you were interviewing [A.F.] that 'Gorilla' had done anything to her? [¶] A. No. [¶] Q. Okay. And she never said anything about that? [¶] A. Nope.") Cirina thus testified about his state of mind during the investigation (a subject defense counsel had explored); Aknin is incorrect in suggesting Cirina was stating his opinion at the time of trial. Even if Cirina's response can be characterized as including an opinion (i.e., the opinion he held at a certain point in the investigation), that opinion was based on Cirina's perception and was helpful to a clear understanding of his testimony about the adequacy of the investigation. (See Evid. Code, § 800.)

8
9
10
11
12
13
14

As to hearsay, the prosecutor asked if A.F. had ever said anything about Gorilla having harmed her, and Cirina answered that she had not. Aknin's counsel was not deficient for failing to object to those responses on hearsay grounds because Cirina did not relate a "statement that was made" for purposes of the hearsay rule. (See Evid. Code, §§ 1200, subd. (a), 225; *Zamudio*, *supra*, 43 Cal. 4th at p. 350; cf. *People v. Snow*, *supra*, 44 Cal. 3d at p. 227.) In other responses, Cirina did relate A.F.'s statements, saying "[A.F.] said she was afraid of [Gorilla], but, yet, he had never hit her." But this testimony had a nonhearsay purpose—A.F.'s statement that Gorilla had never hit her, regardless of its truth, was relevant because it explained Cirina's investigative decisions and conclusions (such as why it did or did not "occur[ ]" to Cirina that Gorilla had caused A.F.'s injuries).

15
16
17
18

*Aknin*, 2013 WL 4016520, *18. The state appellate court reasonably found that the aforementioned testimony did not amount to opinion testimony from Detective Cirina about the source of A.F.'s injuries nor did it amount to inadmissible hearsay, and that trial counsel was not deficient for failing to object to such testimony. *See id.* Accordingly, habeas relief is DENIED.

19

### d) Consistency of Statements

20
21
22

Fourth, the state appellate court gave the following background and then rejected the IAC claim as it related to improper testimony from Detective Cirina about consistency of statements as to whether Griffith was working with A.F., as follows:

23
24
25
26
27
28

Defense counsel cross-examined Cirina about why he did not investigate whether Griffith was A.F.'s pimp or was working with A.F. On redirect, the prosecutor referred to this line of cross-examination, and asked whether Cirina, at the time he arrested Aknin, had "any doubt in your mind that [Griffith] was not the pimp?" Cirina responded: "I had no doubt in my mind [Griffith] was not the pimp." Cirina testified his telephone conversation with Gorilla strengthened his opinion Griffith was not the pimp. The prosecutor asked: "Did that person [i.e., Gorilla] have anything— was there anything inconsistent with what [A.F.] had told you?" Cirina responded: "Everything [A.F.], the real 'Gorilla' and Eddie

> Griffith said were consistent with each other with 'Gorilla' being the pimp and [Griffith] and [A.F.] not having met before that evening."
>
> Aknin contends this response was improper opinion testimony. We disagree. Cirina's opinion that the statements of three people with whom he had spoken were consistent on this point was based on his perception and was helpful to a clear understanding of his testimony about his investigation (a topic raised by the defense). (See Evid. Code, § 800.)

*Aknin*, 2013 WL 4016520, *19. The state appellate court reasonably rejected Petitioner's argument that Detective Cirina's aforementioned testimony amounted to improper opinion testimony because, as explained above, the statements made by A.F., Griffith and Smith were consistent with each other, i.e., "with 'Gorilla' being the pimp and [Griffith] and [A.F.] not having met before that evening." *See id.* Thus, the state appellate court reasonable found that trial counsel was not deficient for failing to object to such testimony, and habeas relief on this claim is DENIED.

### e) Alleged Conspiracy to Rob Petitioner

Fifth, the state appellate court gave the following background and then rejected the IAC claim as it related to improper testimony from Detective Cirina about the alleged conspiracy to rob Petitioner, as follows:

> On redirect, the prosecutor followed up on defense counsel's cross-examination of Cirina about the adequacy of the investigation. The prosecutor asked: "And there was nothing that you learned during your investigation that led you to believe that [Griffith] might be involved with [A.F.] or somehow had robbed [Aknin]?" Cirina replied: "Things I learned during my investigation discounted that." The prosecutor later asked: "Did [Griffith's] history as an armed robber and a rapist in any way change your opinion that he was not involved in this incident as anything other than a good Samaritan?" Answer: "No." The prosecutor elicited from Cirina that, in some cases involving alleged sexual assaults, he has determined there was insufficient evidence to arrest or charge anyone; in this case, he believed arresting Aknin was appropriate based on the evidence he had, and nothing in his investigation changed his opinion about what had happened.
>
> Aknin contends these responses included improper opinion testimony. We disagree. The defense, by cross-examining Cirina about the adequacy of his investigation, opened the door to redirect examination on those matters. To the extent the above responses included Cirina's description of the opinions he held at certain points during the investigation, those opinions were based on his perception and were helpful to a clear understanding of his testimony about the investigation. (See Evid. Code, § 800.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Moreover, Aknin has not shown this testimony was prejudicial. Defense counsel followed up by cross-examining Cirina again about leads he had not pursued.

*Aknin*, 2013 WL 4016520, *19. The state appellate court reasonably found that the aforementioned testimony from Detective Cirina—about whether Griffith might be involved with A.F. or they somehow conspired to rob Petitioner— neither amounted to opinion nor prejudicial testimony. *See id.* Thus, that court reasonable found that trial counsel was not deficient for failing to object to such testimony. *See id.* Accordingly, habeas relief on that IAC claim is DENIED.

### f) Beaumont's Credibility

Finally, the state appellate court gave the following background and then rejected the IAC claim as it related improper testimony from Detective Cirina about Beaumont's credibility, as follows:

> Aknin contends Cirina improperly opined about Beaumont's credibility. The prosecutor asked Cirina about his interview with Beaumont. "During the time that you spoke to him, what was his demeanor and his persona like?" Cirina responded: "I've had a lot of experience with people like Colin where they're just chronic drug users. Colin is like—the best I could describe him, he's very impulsive. I don't think he can think out more than ten, maybe twenty minutes down the road unless he's focusing on getting high; he cannot focus. So Colin's demeanor has always been—two or three contacts I've had with him, confused, perplexed, uninterested, not very focused, not able to recall with much clarity." In closing argument, the prosecutor argued some things Beaumont said (such as that Griffith was from Las Vegas) were not true, but there was nothing inconsistent about Beaumont's basic story that he saw A.F. outside his motel room and helped her.

> Aknin has not shown this testimony was inadmissible or defense counsel was ineffective for failing to object to it. The prosecutor asked about Beaumont's demeanor, and Cirina's answer focused on Beaumont's demeanor and manner during Cirina's contacts with him.

> Moreover, any suggestion by Cirina or the prosecutor that Beaumont was not a reliable witness on all issues could not have been prejudicial because the defense took the same position. Defense counsel asked Cirina: "Now, Mr. Beaumont, obviously, he's got some mental impairment [as a result of long-term drug use], would you agree?" Cirina responded: "I'm not a medical doctor, but I would agree with you, yes." In closing argument, defense counsel stated: "I think I can speak fairly when I say [the prosecutor] and I thought Colin Beaumont would be a main and important witness, but as it turns out, as we witnessed [during Beaumont's trial testimony], his brain is just a bit too fried to be reliable." Defense counsel noted many parts of Beaumont's story had changed over

52

time; counsel argued, however, that Beaumont had consistently said Griffith's street name was Gorilla.   Both parties thus argued Beaumont was unreliable on many issues, but was credible on certain key issues.   Aknin has shown no prejudice from Cirina's testimony on this point.

*Aknin*, 2013 WL 4016520, *19-20.  The state appellate court reasonably found that the aforementioned testimony did not amount to either opinion or prejudicial testimony from Detective Cirina about Beaumont's credibility, and that trial counsel was not deficient for failing to object to such testimony.  *See id.*   Accordingly, habeas relief on this claim is DENIED.

### 6)  Allegedly Improper Closing Argument

The state appellate court gave the following introductory background, applicable law, and then rejected the IAC claim as it related to the prosecutorial misconduct during closing, as follows:

> Aknin contends his counsel was prejudicially ineffective for failing to object to prosecutorial misconduct during closing argument.   "'The applicable federal and state standards regarding prosecutorial misconduct are well established.   "'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process."'"   [Citations.]   Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'"the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'"   [Citation.]   [Citation.]   '[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'   [Citation.]"   (*People v. Smithey* (1999) 20 Cal. 4th 936, 960.)   A defendant's conviction will not be reversed for prosecutorial misconduct unless it is reasonably probable that a result more favorable to the defendant would have been reached if the misconduct had not occurred.   (*People v. Crew* (2003) 31 Cal. 4th 822, 839.)   We conclude some of the prosecutor's statements that Aknin identifies were not improper, and the others were not sufficiently prejudicial.

*Aknin*, 2013 WL 4016520, *20.

Out of the IAC claims relating to the prosecutor's comments at issue outlined below, Respondent has specifically briefed a response to the claim relating to the prosecutor's comment in which she explained why an officer would not lie.  Dkt. 14-1 at 9-10.  The Court will address Respondent's argument below.

Even if trial counsel had failed to object to the prosecutor's arguments at closing outlined

United States District Court
Northern District of California

below, Petitioner must make a showing that trial counsel's failure to object fell outside the bounds of reasonably competent professional assistance, or that he was prejudice by counsel's failure to interpose an objection. *See Strickland*, 466 U.S. at 688, 694. The Court now analyzes each of the seven challenged arguments made by the prosecutor during closing.

### a) Comment on Petitioner's Explanation of A.F.'s Injuries

First, the state appellate court gave the following background and then rejected the IAC claim as it related to the prosecutor's comment on Petitioner's explanation of A.F.'s injuries as follows:

> The prosecutor argued Aknin's explanation for A.F.'s injuries (i.e., she threatened to rob him, and, as he attempted to flee, he grabbed her neck and fell on top of her) was implausible. The prosecutor contended a person who fell would put his or her arms out and then push up (rather than holding on to another person's neck while falling and while pushing up). The prosecutor also argued Aknin's claim that the injuries resulted from his falling on A.F. and holding her neck for 10 to 15 seconds was implausible because the medical evidence showed that, in light of her strangulation injuries, Aknin must have held her throat for at least 50 seconds. As part of this argument, the prosecutor stated Aknin's explanation of how he fell was "the most contrived testimony I have ever heard to explain the most obvious and apparent strangulation injuries I have ever seen in my life."

> Aknin contends the prosecutor, by making this statement, improperly urged the jury to decide the case based on facts not in evidence and the prosecutor's experience in other cases. We conclude it is not reasonably likely the jury construed the prosecutor's remark in that fashion. (See *People v. Smithey*, *supra*, 20 Cal. 4th at p. 960.) The statement was, at most, fleeting hyperbole in the midst of the prosecutor's argument that Aknin's account was implausible in light of the evidence and common sense. The jury reasonably would have understood the prosecutor's argument in that manner, not as an entreaty to decide the issue based on the prosecutor's experience in other cases. (See *People v. Stansbury* (1993) 4 Cal. 4th 1017, 1057 [holding "not inappropriate," prosecutor's statement "'that's the best case I've ever seen in any case I've ever prosecuted of intentional misrepresentation and consciousness of guilt.'"], revd. on other grounds (*Stansbury v. California* (1994) 511 U.S. 318, 327); *People v. Rich* (1988) 45 Cal. 3d 1036, 1092 ["fair" comment on the evidence where prosecutor argued "'I have never seen deliberation and premeditation like that'"].)[FN 14]

> [FN 14:] In *People v. Medina* (1995) 11 Cal. 4th 694, 758, cited by Aknin, the prosecutor argued "'no case I have ever seen'" had such overwhelming evidence, and the Attorney General conceded the comment was objectionable. The Supreme Court held, however,

United States District Court
Northern District of California

> that given the strong evidence of guilt, it was not likely the comment unduly influenced the jury. (*Medina* at p. 758.) Similarly, here, in light of the medical evidence as to the sustained pressure needed to inflict strangulation injuries like those suffered by A.F., it is not likely the jury was unduly influenced by the prosecutor's statement.

*Aknin*, 2013 WL 4016520, *8 (footnote in original).  The state appellate court reasonably determined that the jury would not have misconstrued the prosecutor's aforementioned argument at closing—relating to the implausibility of Petitioner's explanation of A.F.'s injuries—as one that improperly urged the jury to decide the case based on facts not in evidence.  *See id.*  In any event, even if trial counsel failed to object, Petitioner has failed to make any showing to overcome the presumption that the failure to object was a matter of trial strategy.  *See Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1991) ("[a]n attorney's failure to object to the admission of inadmissible evidence is not necessarily ineffective" but is presumed to be sound trial strategy which the movant must overcome); *People v. Williams*, 16 Cal.4th 153, 221 (1997) (a defense attorney's failure to object at trial rarely establishes ineffectiveness).  In the instant case, trial counsel may have chosen not to object to the prosecutor's aforementioned statement to avoid drawing undesired attention to it, especially considering it referred to the alleged *injuries* to A.F. made by Petitioner.  *See United States v. Molina*, 934 F.2d 1440, 1448 (9th Cir. 1991) ("From a strategic perspective . . . many trial lawyers refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality.").  Nor has Petitioner made any showing that any objection—assuming it would have been sustained—would have altered the outcome at trial.  *See Jackson v. Brown*, 513 F.3d 1057, *1082* (9th Cir. 2008) ("[E]ven if [counsel's] failure to object was deficient, we cannot find that, but for his errors, there is a reasonable probability that the jury would not have still convicted [the petitioner].").  The state appellate court was reasonable in concluding that—given the medical evidence as to the sustained pressure needed to inflict strangulation injuries like those suffered by A.F.—it was not likely the comment unduly influenced the jury.  *See Aknin*, 2013 WL 4016520, *8 (citing *Medina*, 11 Cal. 4th at 758).  Because the state appellate court did not unreasonably apply *Strickland*, relief on this claim is DENIED.

United States District Court
Northern District of California

**b)  Comment on Whether Petitioner Attacked A.F.**

Second, the state appellate court gave the following background and then rejected the IAC claim as it related to the prosecutor's comment on whether Petitioner attacked A.F., as follows:

> The prosecutor stated the biggest issue for the jury would be whether Aknin was guilty of rape (count 1).  In making this argument, the prosecutor stated: "Now, here's where, ladies and gentlemen, I find the bottom of the issue is going to result.  I have no doubt in my mind—I certainly hope that there is going to be no doubt that [Aknin] pushed [A.F.] into that alley, choked her to unconsciousness and then something happened before [Griffith] came out.  What happened is what's going to be at issue here.  And you will—I'll tell you about the elements in a minute.  I don't think you're gonna have any problem finding it was an assault with intent to commit rape [count 2].  I don't think that you'll have any problem finding that it was an assault with force likely to cause great bodily injury [count 3].  And I don't think there will be any problem with Count 4, finding that she was battered and serious bodily injury occurred.  [¶]  I think the issue is going to lie in Count 1, did he or did he not rape her?"
>
> Aknin argues that the prosecutor, by stating "'I have no doubt in my mind,'" improperly expressed her personal opinion Aknin was guilty and suggested there was additional evidence beyond what the jurors heard.  In view of the entire context in which these statements were made, it is not reasonably likely the jury understood them in this manner.  (See *People v. Smithey*, *supra*, 20 Cal. 4th at p. 960.)  The prosecutor was referring to the evidence, rather than arguing her personal belief based on matters outside the record.  She argued overwhelming evidence supported conviction on counts 2 through 4, after which she argued in detail about the evidence supporting the rape charge in count 1.  Even within the specific remark challenged by Aknin, the prosecutor shifted from stating her own view ("I have no doubt in my mind"), to expressing her hope that the jury would have no doubt what the evidence showed.  Aknin has not shown prejudicial misconduct.

*Aknin*, 2013 WL 4016520, *21.  The state appellate court reasonably concluded that it was not likely that the jury understood the prosecutor's aforementioned comment—"I have no doubt in my mind"—to equate to her improperly expressing her personal opinion that Petitioner was guilty and suggesting there was additional evidence beyond what the jurors heard.  *See id.*  That court considered the entire context in which these statements were made, and reasonably determined that the prosecutor was referring to the *evidence*, rather than arguing her *personal belief*.  *See id.*  That court further found that it was not reasonably likely the jury understood them to be the prosecutor's personal opinion. *See id.*  Furthermore, in the context of the overwhelming evidence

1    against Petitioner at trial, there was no reasonable likelihood that such a comment by the

2    prosecutor made a difference in the outcome of the trial.  As a result, the state appellate court

3    reasonably concluded that trial counsel's failure to object to the prosecutor's aforementioned

4    comment was not prejudicial under *Strickland*.

5         Accordingly, Petitioner is not entitled to relief on this claim, and this IAC claim is

6    DENIED.

7                            **c)   Comment on Credibility of Witnesses**

8         Third, the state appellate court gave the following background and then rejected the IAC

9    claim as it related to the prosecutor's comment on the credibility of certain prosecution witnesses,

10   as follows:

11             Aknin contends the prosecutor improperly vouched for the
          credibility of prosecution witnesses when she stated: "All I can tell
12        you, ladies and gentlemen, is Eddie [Griffith] and [A.F.] and Colin
          [Beaumont] came in here and did the best they could to tell you the
13        truth."  In light of the context in which the prosecutor made this
          statement, we conclude it was not prejudicial.
14
               The prosecutor acknowledged there were discrepancies in
15        the evidence and stated defense counsel would point out
          inconsistencies among witnesses' statements.  The prosecutor urged
16        the jury to look at "the big picture," and to consider whether the
          inconsistencies were important or were just caused by differences in
17        how people perceive and recall events.  She also noted the trial court
          would instruct the jury on factors to consider in assessing credibility.
18        The prosecutor then stated Griffith, A.F., and Beaumont did their
          best to tell the truth, while acknowledging that some of the things
19        Beaumont said were not true, and that all three witnesses had
          admitted being untruthful on certain issues.   The prosecutor
20        discussed the evidence at length, and argued the jury should
          consider how reasonable a witness's testimony is in light of other
21        evidence in the case.

22             The jury reasonably would have understood the prosecutor's
          statement that A.F. and Griffith did their best to tell the truth as a
23        part of her argument that the jury should focus not on minor
          discrepancies in the evidence, but on whether the witnesses'
24        testimonies were reasonable in light of the other evidence.  The jury
          would not reasonably have understood the prosecutor's statement as
25        an assertion that she knew, based on facts outside the record, that the
          witnesses were telling the truth.  The statement was not prejudicial.
26
     *Aknin*, 2013 WL 4016520, *21.  The state appellate court reasonably found that the prosecutor's
27
     comment relating to the credibility of A.F., Griffith and Beaumont—i.e., that these prosecution
28

1    witnesses did their best to tell the truth—was not prejudicial. *See id.* Instead, that court

2    reasonably considered the comment to be more on whether these witnesses' testimonies were

3    reasonable in light of other evidence. *See id.* Accordingly, the state appellate court reasonably

4    rejected this IAC claim, and this claim is DENIED.

**d) Discussion of Rape at Scene of Incident**

6    Fourth, the state appellate court gave the following background and then rejected the IAC

7    claim as it related to the prosecutor's comment that there was no discussion of rape at scene of

8    incident, as follows:

Aknin testified the ambulance attendant who transported him
to the hospital threatened to put surgical tubing down his nose if he
did not confess what he had done. On cross-examination, Aknin
suggested the attendant, William McClurg, might have reacted that
way because the police had told him Aknin was a rapist. In closing
argument, the prosecutor argued this portion of Aknin's account was
not credible because there was no plausible reason that McClurg (an
independent witness unaffiliated with law enforcement, who
testified he asked Aknin for basic information such as his name and
medical history) would take such actions or lie in court. As part of
this argument, the prosecutor stated: "There is no doubt that William
McClurg, the guy who is now a supervisor of paramedics, who has
no connection whatsoever to lie in court, who basically told you he,
you know, was a medic and then a paramedic and then a paramedic
supervisor. He's going to hear that this is a rape suspect—first of
all, nobody at the scene was talking about a rape. Remember that.
The defendant was loaded into the ambulance before any statements
were being taken, before anybody knew what was going on exactly.
He might have heard something over the dispatch, but the fact is
nobody was saying, 'Oh, he's a rapist. He's a rapist,' or anything
like that. It was all just—remember Eddie [Griffith] said it was
crazy and chaotic, they made him sit down for 20 or 30, maybe,
then, 40 minutes before they interviewed him because they were
trying to stabilize the situation."

Aknin argues the prosecutor's statement that there was no
discussion of rape at the scene was improper because the prosecutor
knew it was false. The evidence Aknin cites does not support this
assertion. Aknin cites pretrial hearing testimony showing that some
police officers knew or believed Aknin was suspected of sexual
assault. Officer Angela Wittman testified about what she knew
when she arrived at the scene: "I believe—well, there was a call that
came out at the Garden Motel, a possible rape had occurred and they
gave a description of one of the suspects and that there was another
male following him on foot." Officer Walter Montti testified he
responded to the Garden Motel because of a report of a sexual
assault. Montti also testified that the reason he stayed with Aknin at
the hospital (after following the ambulance there) was because
Aknin was in custody for sexual assault.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Aknin cites no evidence showing any officer accused Aknin of rape in McClurg's presence or told McClurg that Aknin was suspected of rape, or showing officers discussed an alleged rape at the scene. We also note the prosecutor qualified her statement by acknowledging that McClurg, like the officers, "might have heard something over the dispatch" about an alleged sexual assault. Aknin has not shown the prosecutor knowingly made a false statement.

*Aknin*, 2013 WL 4016520, *21-22. The state appellate court reasonably rejected this IAC claim relating to the prosecutor's comment that no one at the scene was talking about a rape upon finding that Petitioner had not shown that the prosecutor knowingly made a false statement. *See id.* The state appellate court's rejection of this claim was not an objectively unreasonable application of the *Strickland* standard. Petitioner has not established trial counsel's incompetence nor has he shown that the outcome of trial would have been different had counsel objected to the prosecutor's aforementioned comment. Thus, the Court finds that there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Therefore, this claim is DENIED.

### e)   Comment on Police Efforts to Locate Gorilla

Fifth, the state appellate court gave the following background and then rejected the IAC claim as it related to the prosecutor's comment on the police efforts to locate Gorilla, as follows:

> Aknin contends the prosecutor improperly made herself a "witness" during closing argument by describing the efforts to locate A.F.'s pimp, Gorilla. Aknin has not shown prejudicial misconduct.

> First, the prosecutor's statements were based on the evidence. Cirina testified about his efforts to find Gorilla. Cirina testified that, before he read Beaumont's interview statements saying Griffith was from Las Vegas, he did not know the defense theory would be that Griffith was Gorilla. The prosecutor's comments in closing argument echoed these points. The prosecutor stated that, before the prosecution received Beaumont's statements, "it never dawned on us in a million years that somebody was going to try to play [Griffith] off as 'Gorilla' and there was gonna be this big story about a conspiracy and a robbery and him being her pimp and all of that." For that reason, some facts that turned out to be important did not initially appear relevant. ("That explains, ladies and gentlemen, why some of the details that we eventually found to be necessary and relevant, we didn't see in the beginning.")

> Second, Aknin is incorrect in asserting that it was improper for the prosecutor to present any testimony or argument about the investigation. Defense counsel suggested that police had conducted an inadequate investigation and had failed to follow up on leads that would have supported the defense, such as further investigating

59

1    whether Griffith was Gorilla or was working with A.F., and whether
     Gorilla, rather than Aknin, might have caused A.F.'s injuries.  The
2    cross-examination focused in part on Cirina's state of mind during
     the investigation (e.g., defense counsel questioned Cirina about
3    whether certain scenarios had "occur[red]" to him).  For this reason,
     Cirina's testimony about what he knew and thought at different
4    points during the investigation was admissible because it was
     relevant to why he did or did not follow up on leads.  The
5    prosecutor's arguments on this point were based on the evidence and
     were proper.

6    *Aknin*, 2013 WL 4016520, *22.  The state appellate court reasonably found proper the

7    prosecutor's comments relating to the evidence on the police efforts to locate Gorilla or relating to

8    police investigation as to whether Griffith was Gorilla or was working with A.F., or whether

9    Gorilla caused A.F.'s injuries.  *See id.*  As mentioned above, the state appellate court was

10   reasonable in determining that the prosecutor's comments were based on *evidence* in the form of

11   Detective Cirina's *relevant and admissible* testimony as to what he knew and thought at different

12   points during the investigation.  *See id.*  Thus, the state appellate court reasonably concluded that

13   trial counsel's failure to object to the prosecutor's aforementioned comments was not prejudicial

14   under *Strickland*.  Accordingly, Petitioner is not entitled to relief on this claim, and this IAC claim

15   is DENIED.

16                      **f)   Summary of Testimony About Call with Gorilla**

17          Sixth, the state appellate court gave the following background and then rejected the IAC

18   claim as it related to the prosecutor's comment on the summary of testimony about Detective

19   Cirina's call with Gorilla, as follows:

20          The prosecutor argued Griffith was not Gorilla.  As part of
            this argument, she referred briefly to Cirina's testimony about his
21          call to the number A.F. said belonged to Gorilla.  The prosecutor
            stated: "Detective Cirina didn't just get the number and get the
22          records, he actually called the number.  He told you he placed the
            call.  He spoke to a person.  The person had an African-American
23          voice and the person did not give him any details that were
            inconsistent with what [A.F.] told him."
24
            Aknin contends these statements by the prosecutor about the
25          call violated the pretrial ruling on that issue.  As we discussed
            above, although the court phrased its oral pretrial ruling broadly, the
26          record suggests the parties reasonably understood the order not as
            precluding any reference to the call, but only as barring repetition of
27          the statements allegedly made by Gorilla on the call.  In the portion
            of the argument challenged by Aknin, the prosecutor did not repeat
28          Gorilla's alleged statements during the call.  She just noted Cirina's

                                               60

testimony that he made the call, his description of the voice of the person who answered, and his statement that the person gave no details inconsistent with what A.F. had told Cirina.

*Aknin*, 2013 WL 4016520, *22-23.  Similar to the discussion above relating to the reasonable rejection of the IAC claim as it related to what the state appellate court found to be non-prejudicial testimony from Detective Cirina about his telephone call with Gorilla, any comment from the prosecutor summarizing such testimony was reasonably found to be proper by the state appellate court.  *See id.*  The state appellate court reasonably found that the prosecutor did *not* violate the pretrial ruling barring repetition of the statements allegedly made by Gorilla on the call, and thus, that court reasonably rejected Petitioner's IAC claim that trial counsel was deficient in failing to object to the prosecutor's aforementioned comment.  *See id.*  Accordingly, habeas relief on this claim is DENIED.

### g)  Comment that Police Officers Would Not Lie

Seventh, the state appellate court gave the following background and then rejected the IAC claim as it related to the prosecutor's comment that police officers would not lie, as follows:

> The prosecutor argued the police did not intentionally ignore evidence, and she discussed Aknin's testimony that he did not report the alleged crimes against him because everyone at the scene was against him.  In the context of this argument, the prosecutor stated the officers had no reason to lie, their "entire livelihoods are wrapped up in their credibility," they risked prosecution for perjury if they lied, and the jury had no reason to disbelieve their testimonies.  The prosecutor stated that, if she asked a police officer to lie, "[he] would laugh in my face and say, 'Do you think my home and my wife and my kids and my family are worth what you're asking me to do for some scum ball?'"  The prosecutor suggested that, if the police were lying, they would "make up something better," and that, if A.F. were lying, she would say she was raped instead of saying she did not know whether she was raped.

> Aknin argues the prosecutor improperly vouched for the police witnesses.  We agree some of the prosecutor's statements were improper.  The prosecutor argued factual matters outside the record, such as the likelihood the officers would be prosecuted or would risk their homes and families if they lied, to support the veracity of the testifying officers.  (See *People v. Woods* (2006) 146 Cal. App. 4th 106, 114-115 [prosecutor vouched for police officers by arguing factual matters outside the record, such as the officers' experience and financial obligations].)

> But assuming defense counsel should have objected to these statements, Aknin has not shown that the failure to do so was

61

1

2

3

4

5

> prejudicial.  The prosecutor made the statements in the context of
> arguing that Aknin had not shown the officers conspired against him
> or intentionally ignored evidence, and that, if the officers were lying,
> they would have made up testimony that was more incriminating
> than their actual testimony.  Moreover, the officers' testimony was
> not central to the prosecution's case.  Their testimony only
> concerned what happened after the officers arrived at the scene and
> after the charged crimes had been completed.  The evidence
> primarily implicating Aknin in the charged crimes was the testimony
> of A.F. and Griffith, the photographs, and the medical and DNA
> evidence.

6

7

8

9

10

11

*Aknin*, 2013 WL 4016520, *23.  This Court acknowledges that the prosecutor's comments were

inappropriate.  However, as the state appellate court noted, prejudice is lacking as police testimony

went to peripheral matters.  *See id.*  Petitioner has not argued that the state appellate court erred in

this regard.  To the contrary, the state appellate court acknowledged that the officers were not

witnesses to the incident.  *See id.*  The officers arrived only *after* Petitioner was being detained,

and their role at the scene was mostly in collecting the evidence, interviewing the witnesses, and

12

13

14

15

16

taking Petitioner into custody.  The evidence primarily implicating Petitioner consisted of the

testimony of A.F., Griffith, the findings at the scene, the documentation of A.F.'s injuries, the

evidence that Griffith had no connection to Las Vegas and was not known as Gorilla, and the

DNA evidence.

17

18

19

20

21

Petitioner has not suggested any reason that the state appellate court unreasonably applied

*Strickland*.  As explained above, the challenged prosecutor's comment (about why the police

would not lie) was one to which trial counsel could have had a reason not to raise an objection and

which, in any event, went to a peripheral matter.  Therefore, the allegedly erroneous failure to

object did not pertain to the core evidence of guilt.  In view of the foregoing, Petitioner has not

sustained his burden of showing that the state appellate court unreasonably applied *Strickland*.

22

23

Accordingly, this IAC claim is DENIED.

### h)  Any Related Prosecutorial Misconduct Claim

24

25

26

27

For the same reasons, namely the overwhelming evidence against Petitioner mentioned

above, the Court finds that none of the prosecutor's aforementioned comments had a substantial

and injurious effect on the jury's verdict, which is the prejudice standard applicable to habeas

review of claims of prosecutorial misconduct.  *See Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir.

28

1995) (finding no prejudice from prosecutorial misconduct because it "could not have had . . . substantial impact on the verdict" under *Brecht*).  Accordingly, Petitioner is not entitled to habeas relief on any prosecutorial misconduct claim related to the above-referenced IAC claims involving the prosecutor's allegedly improper comments at closing, and such a claim is DENIED.

### 7)  Allegedly Improper References to A.F. as "Victim"

Next, the state appellate court considered and rejected the IAC claim as it related to the numerous references to A.F. as the "victim" as opposed to the "alleged victim," as follows:

> Aknin filed a motion in limine asking the court to preclude the prosecutor and prosecution witnesses from referring to A.F. as "the 'victim.'"  Aknin requested a ruling that the court, parties, and all witnesses refer to Aknin and A.F. by their names.  The People opposed the motion, arguing they should be permitted to refer to A.F. as the "'alleged victim,'" and to Aknin as the "'defendant.'"  At the hearing on the motion, the court stated: "It is my practice to refer to the victim as the alleged victim.  It is my practice to refer to the defendant as the defendant."

> Aknin contends his trial counsel should have objected or moved to strike when, on several occasions, the prosecutor and prosecution witnesses referred to "the victim" rather than "the alleged victim."  Aknin has not shown his counsel was prejudicially ineffective.  The references Aknin cites did not dominate the trial.  To the contrary, during testimony, the prosecutor and the witnesses frequently referred to A.F. by her name.  The prosecutor also repeatedly referred to A.F. by her name during closing argument.  Even if counsel should have objected or moved to strike when the prosecutor or a witness referred to "the victim," it is unlikely these references had a significant prejudicial impact.

*Aknin*, 2013 WL 4016520, *23.  The state appellate court reasonably found that no prejudice resulted from any references made to A.F. as the "victim" during trial, and therefore that court was reasonable in concluding that any failure by trial counsel in objecting to such reference did not amount to deficient performance.  *See id.*  Accordingly, this IAC claim is DENIED.

### c.    Prejudice or Cumulative Error

Finally, the state appellate court reviewed the action for cumulative error based on the aforementioned IAC claims and rejected such a claim, as follows:

> Aknin contends his counsel's failure to object to the above evidence and argument was prejudicial because the allegedly inadmissible evidence, considered cumulatively, improperly bolstered the credibility of A.F. and Griffith.  We disagree.  First, as we discussed above, much of the evidence Aknin identifies was

United States District Court
Northern District of California

admissible, and several of the challenged portions of closing argument were proper.  Second, as we also discussed above, Aknin has not shown the potentially objectionable portions of testimony and argument were prejudicial.  Considering the potentially objectionable evidence cumulatively, we conclude Aknin has not shown a reasonable probability that, absent his counsel's allegedly deficient performance, the outcome of the trial would have been different.  (See *Strickland*, *supra*, 466 U.S. at pp. 687-688, 694; *Carter*, *supra*, 30 Cal. 4th at p. 1211.)

Aknin argues the credibility of A.F. and Griffith was suspect because they lied to the police about certain matters; Griffith lied at the preliminary hearing about whether he threatened to shoot Aknin; A.F. was working as a prostitute; and Griffith had been convicted of, and imprisoned for, rape and robbery.  But these issues were fully aired before the jury, and A.F. and Griffith admitted the conduct Aknin identifies.  Moreover, portions of Aknin's account may have seemed implausible to the jury in light of other evidence.  For example, Aknin's claim that A.F.'s injuries resulted from his falling on her and grabbing her neck as he fell may have appeared unlikely in light of the medical evidence that he must have held her throat for at least 50 seconds.  Similarly, since Aknin directed the cab driver to go to the Garden Motel, his claim that Griffith was A.F.'s pimp and coincidentally happened to be staying at that motel may have appeared implausible to the jury.  We are not persuaded that the potentially objectionable evidence identified by Aknin had a significant impact on the jury's assessment of the witnesses' credibility.

*Aknin*, 2013 WL 4016520, *24.

The Court finds no merit to Petitioner's argument that the cumulative prejudice of trial counsel's errors resulted in ineffective assistance of counsel.

"Cumulative error applies where, 'although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant.'"  *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (citing *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996)).  Where there is no single constitutional error, "there is nothing to accumulate to a level of a constitutional violation."  *Id.*

The Court has found above that in all instances of alleged ineffective performance, trial counsel's performance did not fall below an objective standard of reasonableness.  Based on this record, the Court concludes that Petitioner is not entitled to habeas relief on a claim that he suffered cumulative prejudice from trial counsel's aforementioned instances of ineffective assistance.

Accordingly, Petitioner is not entitled to habeas relief on this claim, and it is DENIED.

64

#### d.      Summary

In sum, the Court finds that there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard" as to all of Petitioner's IAC claims above.  *See Harrington*, 562 U.S. at 105.  As explained above, the Court has found that the state appellate court's rejection of such claims on direct appeal was not an objectively unreasonable application of the *Strickland* standard.  Accordingly, Petitioner is not entitled to relief on any of his IAC claims.

### D.      Insufficient Evidence to Support Rape Conviction

Petitioner claims that "[a]fter stripping away inadmissible hearsay and opinion, there is insufficient, admissible evidence to support his a finding that [he] raped [A.F.]"  Resp't Ex. C at 94-98.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  A petitioner who alleges the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, which, if proven, entitles him to federal habeas relief.  *Jackson v. Virginia*, 443 U.S. 307, 321, 324 (1979).  However, a federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992).  Rather, a federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (quoting *Jackson*, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt has there been a due process violation.  *See Jackson*, 443 U.S. at 324.  The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.* at 324 n.16.

In the instant case, the state appellate court analyzed Petitioner's claim regarding the insufficiency of evidence stating as follows:

> . . . .  To determine whether the prosecution met its burden to prove a charge beyond a reasonable doubt, we apply the "substantial

evidence" test.  (*People v. Cuevas* (1995) 12 Cal. 4th 252, 260.) Under that standard, we "'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]"  (*Id.* at pp. 260-261.)  "'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence. [Citation.]' [Citation.] We "'"presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."'" [Citation.]' [Citation.]" (*People v. Clark* (2011) 52 Cal. 4th 856, 943.) "'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. [Citation.]" (*Zamudio*, *supra*, 43 Cal. 4th at pp. 357-358.)

*Aknin*, 2013 WL 4016520, *25.  The state appellate court held that reversal was unwarranted and concluded as follows:  "After reviewing the record in the light most favorable to the judgment, we conclude there is substantial evidence such that a jury reasonably could find Aknin guilty of rape beyond a reasonable doubt."  *Id.* at 27 (citing *Clark*, 52 Cal. 4th at 943).  In so doing, the state appellate court relied on *Clark*, which applies the federal standard set forth in *Jackson v. Virginia*, 443 U.S. at 319-320, i.e., whether there was substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  *See People v. Johnson*, 26 Cal. 3d 557, 576 (1980) (California standard for sufficiency of evidence claims is the same as the federal Constitutional standard).   The state appellate court noted that, under state law, penetration of the external genital organs is sufficient even if the defendant does not penetrate into the vagina, stating:

> Ejaculation is not an element of rape.  (*People v. Wallace* (2008) 44 Cal. 4th 1032, 1079.)  All that is required is "sexual penetration, however slight."  (§ 263; *Wallace* at p. 1079.)  The penetration necessary to show rape is "sexual penetration and not vaginal penetration.  Penetration of the external genital organs is sufficient to constitute sexual penetration and to complete the crime of rape even if the rapist does not thereafter succeed in penetrating into the vagina."  (*People v. Karsai* (1982) 131 Cal. App. 3d 224, 232, disapproved on other grounds by *People v. Jones* (1988) 46 Cal. 3d 585, 600, fn. 8; see *People v. Quintana* (2001) 89 Cal. App. 4th 1362, 1366.)

*Aknin*, 2013 WL 4016520, *26.  The state appellate court then stated as follows:

United States District Court
Northern District of California

. . . .  Based on A.F.'s testimony, the jury could have concluded that, after A.F. told Aknin she was done and walked away, he grabbed her, dragged her into the alley, and choked her until she was unconscious.  A.F. did not recall ever knowingly having sexual contact with Aknin.   But, as Aknin concedes, the evidence establishes there was sexual contact between him and A.F.  A.F. was a contributor to DNA on Aknin's scrotum and penis.  A.F. was the source of DNA on the outside of the used condom found at the scene; and Aknin and A.F. were contributors to DNA on the inside of the condom.

Based on the evidence of sexual contact, and A.F.'s testimony that no sexual contact occurred before Aknin rendered her unconscious, the jury reasonably could infer that the sexual contact occurred after A.F. was unconscious.  And, the jury reasonably could infer that the type of sexual contact Aknin engaged in after A.F. was unconscious was not oral sex, but was instead sexual penetration with his penis of A.F.'s external genital organs.  (See *People v. Karsai*, *supra*, 131 Cal. App. 3d at p. 232; *People v. Quintana*, *supra*, 89 Cal. App. 4th at p. 1366.)

Other evidence supported the inference that the type of sexual contact that occurred was penetration of A.F.'s genital organs.  A.F. testified that, when she regained consciousness, she was naked from the waist down.  Griffith and Beaumont also testified A.F. had no pants on when they saw her.  A.F. was using a tampon that evening, but it was removed during her encounter with Aknin.  Griffith testified that, when he went outside his room, Aknin was on the ground making what appeared to be digging or swimming motions with his arms, and he looked like he might be having a seizure.  In light of this evidence and the evidence that there was sexual contact of some type between Aknin and A.F., the jury reasonably could infer that Aknin attempted to have intercourse with A.F. and achieved at least slight penetration.

Aknin argues that some of the forensic evidence did not point to a conclusion he raped A.F.  For example, Aknin was excluded as a contributor of DNA found in A.F.'s vagina, on her pubic area, and on the tampon; he was excluded as a contributor of spermatozoa found on A.F.'s body; and he was excluded as a source of DNA found in two of the stains on A.F.'s jeans while a test of the third stain was inconclusive.  Although A.F. was menstruating, no blood was detected on the condom or on Aknin's scrotum, penis, or hands.  Low levels of amylase, which is found in low concentrations in vaginal fluids and in high concentrations in saliva, were found on the outside of the condom.

This evidence does not establish that the jury's verdict was unsupported by substantial evidence.  As to the absence of blood on Aknin and the condom, criminalist Mona Ten testified that, if a woman were menstruating with a limited flow of blood, it would be possible for blood to be on the condom, but it would not necessarily occur.  Nurse practitioner Diana Emerson testified to the same effect.  Similarly, the test results did not permit a conclusion as to which bodily orifice was the source of the amylase on the outside of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

> the condom. Ten testified the results of the testing on the condom were consistent with a penis with a condom on it being inserted into A.F.'s vagina and were also consistent with a penis with a condom on it being placed into A.F.'s mouth. And, while the evidence would support a conclusion Aknin did not ejaculate and may not have fully penetrated A.F., it does not establish a lack of substantial evidence supporting a finding of at least slight penetration.
>
> In his reply brief, Aknin notes that Griffith testified he did not see Aknin's hips move up and down, and Griffith did not testify he saw Aknin sexually penetrate A.F. We conclude, however, that Griffith's testimony about what he did see (Aknin on the ground making swimming or digging motions), in combination with other evidence, could support an inference that Aknin sexually penetrated A.F.

*Id.* at *26-27. Therefore, the state appellate court concluded that, after applying a similar standard to the federal standard set forth in *Jackson v. Virginia*, substantial evidence existed to support Petitioner's conviction of rape. *See id.*

Petitioner's claim is without merit. Under the state appellate court's interpretation of the forcible rape statute, "penetration of the external genital organs is sufficient" even if the petitioner does not penetrate into the vagina. *See id.* at *26. The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Furthermore, the record clearly supports the conclusion that a rational trier of fact could have found proof of rape beyond a reasonable doubt. As mentioned above, Petitioner argues that if the evidence he claims was inadmissible or was improper opinion evidence is excluded, there is insufficient evidence to support the conviction. Resp't Ex. C at 98. While the erroneous admission of evidence might entitle a habeas petitioner to relief on that basis, in assessing the sufficiency of the evidence the reviewing court is required to weigh *all of the evidence*, even evidence which was improperly admitted. *See United States v. Castaneda*, 16 F.3d 1504, 1510 (9th Cir. 1994).

Here, Petitioner cannot sustain his burden under the AEDPA. As mentioned above, the state appellate court, after noting that under state law penetration of the external organs is sufficient to constitute rape even if the vagina is not penetrated, stated that there was sufficient

68

evidence from which a rational jury could find the requisite element of penetration.  *Aknin*, 2013 WL 4016520, *26-27.  It was undisputed that Petitioner contacted A.F. for sexual purposes.  Moreover, A.F. was a contributor to the DNA on Petitioner's scrotum and penis.  A.F. was the source of DNA on the outside of a condom, and Petitioner and A.F. were contributors to DNA on the inside of the condom.  Moreover, A.F. was naked from the waist down, her tampon had been removed, and Griffith described Petitioner's position as one that could be consistent with intercourse.  The state appellate court also noted that the defense arguments regarding the lack of evidence that one might expect to find in a completed rape, but concluded that the lack of such evidence tended to show only a lack of ejaculation and lack of full penetration, or were otherwise not inconsistent with rape.  *Id.* at *25-26.

Petitioner's argument appears to be a request for this Court to reweigh the evidence.  However, the issue is not whether a plausible argument could be made that the evidence of penetration is susceptible of a different conclusion from that drawn by the state appellate court.  The issue is whether the state appellate court unreasonably applied *Jackson*.  For the reasons stated above, this Court finds that the state appellate court's application of *Jackson* was not unreasonable.

Accordingly, Petitioner's claim that the trial court violated his rights to due process does not warrant habeas relief, and his claim based on insufficient evidence of rape is DENIED.

## V.    CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case.  For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

## VI.    CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.     All claims from the petition are DENIED, and a certificate of appealability will not

69

1    issue.  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2         2.    The Clerk of the Court shall enter judgment, terminate any pending motions and

3    close the file.

4         IT IS SO ORDERED.

5    Dated: August 30, 2016

6

7    _____

8    YVONNE GONZALEZ ROGERS
     United States District Judge